## FREUND v. HODGES FINISHING CO.

(Circuit Court of Appeals, First Circuit. August 5, 1926.)

No. 1997.

Principal and agent ⬡81(4)—Contract to pay sales agent commission on orders accepted construed as to what constituted "orders."

Under a contract of employment of plaintiff as sales agent for defendant's mill for dyeing and finishing textile fabrics, he was to receive a commission on the gross amount of all orders accepted. The business having grown beyond the capacity of defendant's mill, arrangements were made with customers to furnish weekly a minimum yardage of cloth for finishing, but such agreements did not fix prices, which were subject to change from time to time. *Held*, that such agreements were not "orders," within the meaning of the contract, but rather agreements to give orders, and that plaintiff was entitled to commissions only on specific orders given thereunder during the term of his employment.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Order.]

In Error to the District Court of the United States for the District of Massachusetts; James Arnold Lowell, Judge.

Action at law by Fred C. Freund against the Hodges Finishing Company. Judgment for defendant, and plaintiff brings error. Affirmed.

Charles F. Choate, Jr., of Boston, Mass., for plaintiff in error.

Samuel H. Pillsbury, of Boston, Mass. (Stanley E. Gifford and Pillsbury, Dana & Young, all of Boston, Mass., on the brief), for defendant in error.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

JOHNSON, Circuit Judge. This is an action of contract to recover commissions alleged to have been earned by plaintiff under the terms of a written contract, and also for a small balance for disbursements made for the defendant's account.

The defendant was engaged in the business of bleaching, dyeing, mercerizing, and finishing textile fabrics, with a factory at East Dedham, Mass. It began business in 1910, and at its start employed the plaintiff as its sole sales agent and solicitor, under a written contract identical with the one in suit, except in one paragraph, which is not material to the issue now raised, and he continued as such agent and solicitor until March 15, 1920, when the contract in suit was made.

Under its terms the plaintiff was to receive "a commission of 5 per cent. upon the gross amount of all orders accepted for finishing textile fabrics by said company, regardless of whether such orders are furnished through the party of the second part or to the company direct."

The contract further provided that it might be terminated on the 1st day of July, 1922, or any 1st day of July thereafter, by giving four months' previous notice in writing of such intention to terminate the contract. It also provided that, in case of its termination, "the party of the second part shall be entitled to receive full commission on any work done thereafter on orders received up to the date of such termination." It also provided that the company should on the 15th day of each month render to the plaintiff a statement of all orders accepted during the previous calendar month, and also a statement of textile fabrics furnished and finishing charges billed during the previous calendar month, with a check to his order for the amount of such commission of 5 per cent. on the gross amount of finishing charges billed to customers. The contract further provided that no commission should be paid to the plaintiff "other than for 5 per cent. on finishing charges of the company in finishing textile fabrics and on 'cases containing the same as billed to customers," and states: "It is expressly understood and agreed that commissions do not apply to any other financial transactions of the company."

The record shows that the business of the defendant prospered and largely increased, until orders greater than the capacity of its mill could fill were supplied. It then became necessary to enter into arrangements with different customers as to the minimum amount of work which would be supplied by them, so that they could be served and the capacity of the defendant's plant not be overrun. Arrangements were therefore made, by which customers were to furnish weekly for an indefinite time, subject to be terminated by 30 days' notice, a minimum yardage of cloth, but not to exceed a maximum amount, to be finished by the defendant upon orders to be supplied to the defendant by them from time to time. Some of these agreements were made by the plaintiff and submitted to the defendant for its approval, and others were made directly by the defendant.

In accordance with the terms of the contract with the plaintiff, written notice was given to him by the defendant on February 8, 1922, that it would terminate the contract on July 1, 1922. The District Court has found that all commissions due the plaintiff up to the date of the termination of the contract had been paid. But, after July 1, 1922,

and up to April 30, 1924, it is stipulated by the parties that the defendant finished for customers with whom arrangements had been made to supply weekly a minimum yardage of cloth to be finished and sent bills to these customers for the work thus performed for the amount of .$496,462.41, and upon this this amount the plaintiff claims to recover 5 per cent. commission, with interest.

The case was heard by the District Judge without a jury. There are 39 assignments of error, which call in question the ruling of the court upon the meaning of the term "orders" as used in the contract, and the refusal to give requested instructions, which, in substance, were that the agreements made with the customers to furnish weekly a minimum yardage of cloth to be finished for an indefinite time, until terminated by 30 days' notice in writing, constituted an order, and also called in question the ruling of the court that the plaintiff's bill for disbursement should be cut down by the amount of $60.60, because covering expenses which, under the terms of the contract, were to be paid by him.

The court ruled that the agreements made with customers in regard to the minimum yardage of cloth which was to be supplied the defendant for finishing was not an order, but an agreement to give orders, and that the plaintiff was entitled to his commission only upon orders which had been received by the defendant up to July 1, 1922, and that the plaintiff had been paid his commission upon all such orders.

The meaning of the word "orders," in its ordinary use, is well understood and contains no ambiguity. We find nothing in the conduct of the parties or in their dealings with each other to show that they treated the word "orders" in any other manner than in its generally and ordinarily accepted sense, or that the plaintiff made any claim that any other interpretation should be put upon the term than that which the parties had evidently placed upon it, until notice of the termination of his contract.

During the 10 years that he had been employed in the same capacity by the defendant under his first contract, the plaintiff had received his commission upon orders which he had obtained for work for the defendant's mill, and we think the word "orders" was used in the same sense in the second contract as it had been used in the first, and in accordance with which the parties had acted. Because of the prosperity of the defendant's mill, another situation arose early in 1921, which made it necessary to curtail the amount of orders, in order that its capacity might not be exceeded.

A convenient and effective way to do this was to agree upon the amount of work which would be supplied by different customers to the mill, for which orders would be given by them from time to time. The parties, however, do not appear to have treated these arrangements as binding contracts, for the prices to be charged for the work, as well as the amount to be furnished, were changed from time to time.

S. H. Greene & Sons v. Freund, 150 F. 721, 80 C. C. A. 387, cited by the plaintiff in support of his contention, does not support, it, because, in that case, actual contracts were made between the customers and the mill as to the yardage of cloth to be furnished for finishing, and also as to price, which was evidenced by a "price memo," which the court held to be an effective contract. As the contract in that case is not before us, we are not informed as to the basis upon which commissions were paid.

In the present case, by the express term of the contract, commissions were to be paid upon the bills rendered by the defendant for finishing goods described in the orders which the plaintiff had obtained. During the long period of the plaintiff's employment, no other construction had been placed, either by him or by the defendant, upon the term "orders," as used in the contract, than that it meant the orders which from time to time different customers should send to the defendant, and in all correspondence which passed between the parties there was never any claim by the plaintiff that he was entitled to a commission upon orders which might be given by customers to the defendant for an indefinite time after the termination of his contract, even where an arrangement had been made by which a certain part of the capacity of the mill was to be allotted to the work of filling the orders of these customers.

We agree with the District Court that the plaintiff was entitled to his commissions upon the bills rendered for finishing the orders which he had obtained. He was entitled, also, to a commission upon any order which had been accepted by the defendant, but which had not been filled at the termination of the contract; but no claim was made that there was anything due the plaintiff on such orders, and the District Court has found that he was paid his commission upon all orders obtained by him before the termination of his contract.

The right of the plaintiff to recover commission upon orders obtained by him before July 1, 1922, the date of the termination of his employment, but not filled until after that date, was raised by the following request:

"Upon the termination of the plaintiff's employment on July 1, 1922, he became entitled, in the words of the contract in suit, 'to receive full commission on any work done (by the defendant) thereafter on orders received up to the date of such termination'; i. e., July 1, 1922."

In relation to this request the court stated: "I rule that the evidence shows to my satisfaction that plaintiff has been paid on orders received up to July 1, 1922."

No error is assigned to this ruling or finding of the court.

Paragraph 9 of the contract expressly provides that the only commissions to be paid the plaintiff were 5 per cent. on finishing charges of the company in finishing textile fabrics and on cases containing the same, as billed to customers, and that he was not entitled to commissions upon any other financial transactions of the company.

From a careful examination of the whole record, including the voluminous correspondence which forms a part of it, we can reach no other conclusion than that the commissions, under the terms of the contract for which the plaintiff was entitled to be paid, were 5 per cent. on the charges of the defendant for furnishing goods for which orders had been received during the term of the contract.

In the claim of the plaintiff for reimbursement of expenses, the court disallowed the item of $60.60, covering expenses of trips to the plant at East Dedham, for the reason that the treasurer of the defendant company, Mr. Hodges, testified he did not order the plaintiff to make these trips.

Under the contract, the expense of all trips to the plant were to be borne by the plaintiff, but the expense of other trips made by order of the company were to be paid by the company. The expense of these trips was therefore correctly disallowed.

The judgment of the District Court is affirmed, with costs to the defendant in error in this court.