HOWARD McDONALD *vs.* WARREN FITCH & others.

Suffolk.   October 6, 7, 1932. — January 16, 1933.

Present: RUGG, C.J., CROSBY, WAIT, DONAHUE, & LUMMUS, JJ.

*Frauds, Statute of.   Contract,* Rescission, Performance and breach, Implied, Of employment.

The statute of frauds is an affirmative defence in proceedings to enforce rights under a contract, and must be pleaded by the defendant although the plaintiff's pleadings indicate that the contract was oral.

It *was stated* that an oral contract of employment, whereby the employee was to be paid a certain sum per week, to be reduced if business conditions did not warrant it, plus one fifth of the net profits of the employer's business each year, which was to be retained by the employer until $10,000 should be accumulated, whereupon the employee should be entitled to a one-fourth interest in the business, no time limit being fixed for the accumulation of the $10,000, was susceptible of performance within one year and was not within the statute of frauds.

After the contract above described had been carried out by both parties for several years, and at a time in September when the plaintiff's one-fifth share of the annual net profits had accumulated in the employer's hands to the amount of about $3,500, the employer informed the employee that his weekly salary thereafter would be a certain sum and that "all previous agreements" between them "were off." The employee without comment continued to work until the following February, when the employer sold the business.   In a suit in equity by the employee to reach and apply interests of the employer, not attachable at law, to payment of the $3,500, the plaintiff waived any right to share in the profits after September, and it was *held,* that

(1) The plaintiff's act of continuing, without comment, to work for the defendant after September did not require a finding that he then had agreed with the defendant that he should not be entitled to the $3,500;

(2) This was not a suit in equity for a rescission of the contract, and there was no occasion for the plaintiff to put the defendant *in statu quo,* or to do other things essential to rescission by him of an existing contract;

(3) The defendant's act in selling the business rendered impossible further accumulation of profits for the plaintiff in accordance with the contract, and was an abrogation thereof;

(4) The defendant thereafter had no right to retain such profits in his hands: the $3,500 already accumulated became money which in equity and good conscience belonged to the plaintiff;

(5) The plaintiff was entitled to a decree in his favor.

BILL IN EQUITY, filed in the Superior Court on September 8, 1931, and afterwards amended, described in the opinion.

The suit was referred to a master. Material facts found by the master, certain interlocutory orders and decrees and a final decree, ordered by *Weed*, J., are described in the opinion. The judge reported the suit for determination by this court.

*L. E. Thayer*, for the defendants.

*H. F. Wood & J. L. Burns*, for the plaintiff, submitted a brief.

WAIT, J. This is a bill to reach and apply certain interests of the defendant Fitch, not attachable at law, to payment of an amount claimed to be due to the plaintiff. It is not a bill in equity for rescission of a contract. The case was referred to a master who found, *inter alia*, the following facts: The defendant owned and conducted a wholesale fish business under the name Warren Fitch Company. The plaintiff entered his employ in August, 1925. In January, 1926, the defendant proposed that the plaintiff continue in his employ at $100 a week, this salary to be reduced if business conditions did not warrant it, and, in addition, yearly, one fifth of the net profits of the business, to be used solely to purchase a one-fourth interest in the defendant's business and to be retained by the defendant until $10,000 should be accumulated whereupon the plaintiff should be entitled to a one-fourth interest in the business in either a corporate or partnership form. No time limit for the accumulation of the $10,000 was fixed. Pursuant to this agreement the plaintiff received the weekly salary, and in January of 1927 and of 1928 received checks for $2,248.48 and $1,314.38 as one fifth of the profits of the respective years. By consent of the defendant he retained $248.48 and $314.38 and returned $2,000 and $1,000 to be held for the accumulation. No profit was figured for the year 1928 owing to illness of the defendant, but the amount coming to the plaintiff as shown by the books would have been $549.51. A similar showing from the books for 1929 showed one fifth of the profits to be $360.18. From January, 1926, to August, 1928, the plaintiff was paid $100 per

week and the defendant drew a like sum. Thereafter he was paid $80 and the defendant drew $80 weekly by mutual consent. On September 3, 1929, the defendant told the plaintiff that his weekly salary thereafter would be $60 per week and that "all previous agreements" between them "were off." Without comment the plaintiff continued at work, and thereafter received $60 per week until February 15, 1930, when the defendant sold the business. In May, 1929, the defendant told the plaintiff he wanted to sell the business, and, on February 12, 1930, that he intended to sell it. On the latter date, the plaintiff asked what would become of the funds left by him with the defendant, and, for answer, was told the defendant owed him nothing as all agreements with him had been cancelled in September, 1929, and he was indebted to the defendant. The plaintiff kept on at work for the purchaser.

The master reported that a balance of $3,490.12 was due the plaintiff. This was reached by adding one fifth of the profits for 1926, 1927, and 1928 and two thirds of one fifth of the profits of 1929, and subtracting from the total, overdrafts in 1927, 1928, and 1929. The plaintiff waived all claim to any profits after September 3, 1929. No demand on the defendant was made before filing the bill on September 8, 1931. The master found as follows: "I find that by remaining in the employ of the defendant after September, 1929, the plaintiff thereby assented to waive one fifth of the profits after that date, and I therefore find that the plaintiff is entitled only to two thirds of one fifth of the net profits for the year 1929, which amounts to $240.12."

The defendant Fitch filed exceptions to the report but waived them at a hearing on confirmation. The plaintiff moved to strike out paragraphs dealing with the amount for which the defendant sold. This motion was allowed; and, as thus amended, the report was ordered to be confirmed. Later the defendant Fitch moved a recommittal. The report was recommitted for stated purposes. A supplemental report was filed which stated that counsel for the plaintiff "expressly waived damages for breach of the

contract by the defendant's sale of his business, and elected to rely on the rescission by reason of the sale." It found damages in the amount as above stated, in view of the election "to seek recovery by reason of rescission caused by the defendant's sale of the business." The defendant excepted to the finding on the reason given, and for failure to state the rule used in assessing damages. The case came on for hearing on the plaintiff's motion to confirm the report and supplemental report and for final decree. The defendant Fitch waived his exceptions save to the finding of damages. The plaintiff conceded that the finding was based solely on what appeared in the pleadings and the reports, and stated that "he is relying solely on his right to recover on the basis of rescission." On this basis the objection was overruled and a decree confirming the reports was ordered. At the hearing on the entry of final decree Fitch contended that the contract was unenforceable. The judge ruled that there was an enforceable contract, and "that the contract was not terminated by the parties on September 3, 1929, and a new agreement of employment at $60 a week substituted, but rather that performance of the original contract by the defendant was made impossible by his conveyance of the business on February 15, 1930." The judge ruled that the master was not justified in finding that by remaining after September, 1929, in the defendant's employ the plaintiff assented to waive one fifth of the profits after that date, but the error was immaterial in view of the plaintiff's position that he claimed no profits after September, 1929. The judge ordered a final decree adjudging the plaintiff entitled to recover $3,490.05 with interest from September 8, 1931, and making appropriate orders for reaching and applying interests of Fitch; and he reported the case upon the pleadings, the master's reports, the order for interlocutory and final decrees, and all questions of law therein for the consideration of this court.

In substance, the defendant Fitch contends that the alleged contract was unenforceable and that the plaintiff has no standing on the doctrine of rescission. The first ground rests on the statute of frauds, on the basis that the

contract not to be performed within a year was oral, and so was unenforceable. The statute was not pleaded. It is an affirmative defence. The bill alleged the promise to be oral. The defendant, not having pleaded this defence, cannot rely on it. Moreover, he would not be successful if he could so rely; for the contract was one of service which could be performed within a year. It was not within the statute of frauds.

Next, although the word "rescission" as used in the master's and judge's reports tends to confuse the thought, both master and judge rightly are thinking of an action at law for money had and received brought into equity by our process for reaching and applying interests which cannot be attached at law, where the defendant is holding property after a partial failure of consideration due to his own act. They are not dealing with the right of rescission of a plaintiff in equity. Here the facts show an employment to be recompensed partly in weekly payments of wages and partly by a share in yearly profits; a full performance by the employee; a deposit of the profits with the employer to be applied to a purchase of a share in the business; an act of the employer rendering such application impossible, and a refusal to pay over the amount deposited. The defendant holds money earned by and belonging to the plaintiff and refuses to return it because, through an act of his own, the purpose for which he was holding it has become impossible. The judge was right in holding that the plaintiff's right to recover "was not terminated by the parties on September 3, 1929, and a new agreement of employment . . . substituted." Even if a new agreement of employment on new terms was thus made, it did not defeat the plaintiff's claim for his own money then in the defendant's hands under the old contract, unless both parties so agreed. The master and judge were justified in failing to find this latter agreement. Merely keeping still and going on earning a living under the same man or under the purchaser from him do not require such a finding.

There was no occasion for the plaintiff to put the de-

fendant *in statu quo,* or to do other things essential to rescission by him of an existing contract. When the defendant sold — as he may have had, we think, a right to do — he tore the life out of the contract which until then had bound him and the plaintiff; and he put an end to his right to retain the profits deposited with him by the plaintiff under the contract so destroyed.

The principles are elementary. Final decree for the plaintiff in accord with the judge's order should enter with costs.

*Ordered accordingly.*