Paul C. GEBHARD, Plaintiff, Appellant,

v.

ROYCE ALUMINUM CORPORATION,
Defendant, Appellee.

No. 5855.

United States Court of Appeals
First Circuit.

Heard Oct. 5, 1961.

Decided Nov. 8, 1961.

Rehearing Denied Dec. 15, 1961.

Phillip Cowin, Boston, Mass., with whom Fox, Orlov & Cowin, Boston, Mass., was on brief, for appellant.

Thomas D. Burns, Boston, Mass., with whom William H. Clancy and Burns & Levinson, Boston, Mass., were on brief, for appellee.

Before WOODBURY, Chief Judge, and HARTIGAN and ALDRICH, Circuit Judges.

ALDRICH, Circuit Judge.

This diversity action by a salesman for commissions contains a saga of alleged overreaching, much of which we need not detail. The question is, who did what, and to whom. The trial court felt that the plaintiff was the significant offender, disagreeing with the jury, and directed a verdict for the defendant un-

der Rule 50(b), Fed.Rules Civ.Proc. 28 U.S.C.A. Plaintiff appeals.

On April 9, 1956, plaintiff wrote a letter to Royce Aluminum Corporation, defendant-appellee, purporting to "recap" the oral agreement they had reached on April 3 under which plaintiff was to be defendant's exclusive sales representative in Metropolitan New York City. One of the provisions recited was that plaintiff was to receive "5% of the gross amount of all invoices to all accounts obtained or serviced by me." Written acknowledgment was requested. Defendant made no written reply until April 27, when it wrote, making no mention of much that was in plaintiff's letter, referring to a later conference, and confirming that it had been agreed that plaintiff was to have the "Manhattan-Long Island area exclusively" and to receive a 3% commission until the defendant was on a three-shift basis, and then 5%. This last was subsequently changed by a letter from the defendant, under date of May 10, to include 4% on two shifts. It was stipulated at the trial that the relationship was terminable at the will or "pleasure" of either party. According to the complaint, it was terminated by the defendant "abruptly and in bad faith" in April 1960, after which plaintiff brought this action.

Pausing here, it is difficult to see how an agreement at will can be terminated in bad faith, other than with respect to non-payment of commissions or other matters already accrued. See Brooks v. Gregory, 1934, 285 Mass. 197, 205, 189 N.E. 195; cf. McDonald v. Fitch, 1933, 281 Mass. 528, 183 N.E. 848. Plaintiff overstated his case still further by complaining that "arbitrarily, in breach of the agreement," defendant in April 1960 sought to change plaintiff to a non-exclusive salesman, at a lower rate of commission. It must be clear that when employment is at will the employer is free to terminate and make a new proposal at any time. See Norton v. Brookline, 1902, 181 Mass. 360, 361, 63 N.E. 930. This elementary misconception permeates the entire case. On the other hand, its correction does not solve all of our problems.

It was apparently acknowledged that if the original agreement should be interpreted to cover all sales in the area, including those not obtained or serviced by the plaintiff, and was never modified in any respect, plaintiff was owed some $32,-000. Defendant contends that the agreement was modified from time to time and that plaintiff accepted the changes and cannot now recover. The court, by its action, ruled that defendant had fully established this defense by cross-examination of the plaintiff (the only witness) and by the written exhibits.

We can dispose shortly of many of plaintiff's points. Plaintiff's brief states that he had "an express agreement * * * to pay * * * commissions on all sales and deliveries in the specified area," meaning, whether he had any connection with them or not.[1] The express mention of what commissions were to be paid upon is in plaintiff's "recap" letter of April 9. It states the reverse: accounts "obtained or serviced by me." While defendant's subsequent letters never specifically confirmed that portion of the letter of April 9, they did not refer to many other matters stated therein which quite apparently were accepted and were part of the agreement. On the entire record we think that the letter of April 9 must be found to state the initial contract as to matters expressly changed by the defendant's letters of April 27 and May 10, 1956. These made no change in this respect. Plaintiff is not entitled to commissions on accounts he neither obtained nor serviced.

■■ Throughout the trial plaintiff took the position that whenever defend-

---

1. Plaintiff goes on to argue that this result would have been implied in any event because he was an "exclusive" salesman. We need not decide whether this is correct. The cases which he cites involve express provisions to that effect, or contain affirmative evidence of custom. The question is irrelevant because there could be no implication where there is express language.

ant proposed a different commission rate, whether before accepting some particular order or, generally, as to all future orders, it acted arbitrarily and without right. After agreeing that the employment was at will, he was asked, "XQ. * * * you knew the rate of commission was something that was subject to agreement from time to time? A. No, it was not * * *. No reductions, no." Plaintiff's explanation of defendant's letter stating that if he did not like the changed condition he need not continue to work (which he continued to do) was that thereafter "he accepted the checks because he had to," but that he never agreed to any change, and hence the original agreement remained in full force. It is difficult to think that even a layman could believe this. Since defendant could discharge plaintiff at any time, it could equally initiate modifications at any time, other than as to accrued matters. Plaintiff's only alternatives were to accept the new conditions, or quit. Flint v. Youngstown Sheet & Tube Co., 2 Cir., 1944, 143 F.2d 923, 925; Swalley v. Addressograph Multigraph Corp., 7 Cir., 1946, 158 F.2d 51, 54, certiorari denied 330 U.S. 845, 67 S.Ct. 1086, 91 L.Ed. 1290. By continuing to work, plaintiff, knowing the newly proposed terms, accepted them as a matter of law.

This disposes of the major part of plaintiff's claim. There are two matters, however, which the defendant seems not to have refuted. According to plaintiff the two- and three-shift increases were not even purported to be cancelled until January 1, 1958. It appears that in a few instances prior thereto plaintiff may not have been paid these increases.[2] Secondly, on those accounts on which plaintiff was entitled to be paid, the termination of his employment did not affect his right to commissions on orders already received, but not filled until afterwards. Rollins v. Bazirgan, 1925, 252 Mass. 279,

147 N.E. 821; Globe Paper Co. v. Russell Box Co., 1935, 291 Mass. 1, 10, 195 N.E. 710. With respect to Long Island Shower Door Co., which at one time made a substantial advance deposit against subsequent orders, plaintiff was entitled to commissions on any orders received before termination of his employment. But since defendant had no right to retain this deposit except to the extent that orders were placed, plaintiff was not entitled to commission on orders received against the deposit after his termination. Cf. Watkins v. United States, 1 Cir., 1961, 287 F.2d 932, 934–5. See also Freund v. Hodges Finishing Co., 1 Cir., 1926, 14 F.2d 424, 425.

■■ The court erred in directing a verdict. But by no possibility was plaintiff entitled to the jury's award of $20,000. In setting it aside the court referred to the size of the verdict as well. Therefore, although the direction of judgment under Rule 50(b) was error, the verdict is not reinstated. Plaintiff is entitled to a new trial, limited to the issues discussed in the preceding paragraph.

Judgment will be entered vacating the judgment of the District Court and remanding the case to that court for further proceedings not inconsistent herewith. No costs to either party.

### On Petition for Rehearing

Amplifying our opinion in the light of the petition for rehearing, on May 7, 1956, after receiving defendant's acknowledgment of April 27 to his "recap" letter of April 9, plaintiff wrote, "Ref: Addenda 2,[1] to letter dated April 9, 1956. Gentlemen: I have been expecting a letter daily in confirmation of all details concerning our association * * *. I am proceeding as planned under the assumption that all is in agreement but cannot be sure of your thinking without

2. By this we do not refer to the Winthrop account, for which a special agreement was shown.

1. Addenda 1 was dated April 9, and is irrelevant to the present question.

seeing it as a confirmation * * *"
The "details" were obviously those stated in the reference letter of April 9 not mentioned in defendant's letter of April 27, one of which plaintiff now asserts, without evidentiary support, was varied in the final contract. This is made clear by the next paragraph.

"I believe the only thing we are mutually concerned about *in regard to everything I covered* in my above noted reference letter is the change in the proceedure [sic] on payment of commission. As discussed with you on the phone the other day Ed, the mutual understanding of my renumeration [sic] at the rate of 3% on a single shift operation, 4% on a two shift operation and 5% on a three shift operation to be effective automatically on all unshipped orders should resolve the entire problem." (Italics supplied.)

Plaintiff then received defendant's letter of May 10, which it is apparent he accepted as the requested confirmation. There is no evidence of any further contractual negotiation until the questions of modification in plaintiff's disfavor arose with which the trial was principally concerned.

■ Thus, at plaintiff's request, the initial contract was explicitly set out in a series of letters. It was unambiguous. Had there been specific contradictory oral conversation—of which there is no suggestion—it would have been excluded by the parol evidence rule. Plaintiff contends, however, that since he alleged a somewhat different contract in his complaint and defendant's answer admitted this allegation, defendant is bound by its admission. Defendant's answer was no doubt careless, but it could have been amended. When plaintiff proved a contract differing on its face from his own pleading, this was the end of any vitality in defendant's answer.

The petition for rehearing is denied.