**John M. ROBICH, Plaintiff-Appellee,**

v.

**PATENT BUTTON COMPANY OF TENNESSEE, INC., Defendant-Appellant.**

**No. 18665.**

United States Court of Appeals
Sixth Circuit.

Oct. 16, 1969.

W. Keith McCord, Knoxville, Tenn., for appellant; Egerton, McAfee, Armistead & Davis, Knoxville, Tenn., of counsel.

Robert L. Crossley, Knoxville, Tenn., for appellee; Baker, Worthington, Barnett & Crossley, Knoxville, Tenn., of counsel.

Before EDWARDS, McCREE and COMBS, Circuit Judges.

McCREE, Circuit Judge.

This is an appeal by a fabricator of molded plastic parts from a judgment in a non-jury case in favor of a manufacturer's representative who sued for commissions under an agency agreement.

Plaintiff-appellee Robich of Louisville, Kentucky represented defendant-appellant Patent Button Company, whose principal office was in Knoxville, Tennessee, in its business relationship with the Appliance Division of General Electric Company in Louisville. The parties

signed the contract involved in this litigation in November, 1962. It superseded their first agreement, entered into in January, 1961, and provided, as did the first contract, that Robich would receive a commission of 5 per cent on net sales by Patent Button in his territory. The contract could be terminated by either party on 60 days written notice. In case of termination, the contract provided:

> No commissions shall be paid for any sales made by the TSR [1] or the [Patent Button] Company after termination of the agreement. But, full commissions shall be paid the TSR on all shipments made by the Company on all orders accepted by the Company before final termination of the agreement, even if said shipments occur after termination of the agreement.

Between 1961 and 1964 relations between plaintiff and defendant proceeded without controversy. General Electric would send Patent Button an "open end purchase order" for a particular part. This document prescribed physical specifications, price, and payment terms, but provided that quantity, time of shipment, and destination were to be specified in "material arrival schedules" (also referred to as releases). Patent Button would acknowledge the open end purchase order, and GE would provide tools to manufacture the part. When Patent Button received a material arrival schedule pertaining to a particular part, it would acknowledge the document and produce and ship the parts to GE. Patent Button paid commissions to Robich only after shipments were made.

Appellant's sales to General Electric in 1960 amounted to only $10. During the first year of the agency contract, they increased to $5,000, then to $73,000 the second year, to $154,000 the third year, and to $184,000 the fourth. In a letter dated December 30, 1964, Patent Button terminated the agency, as the contract permitted, effective February 28, 1965. Patent Button's sales to GE amounted to $195,000 in 1965 and $202,000 in 1966.

After termination, appellant paid Robich commissions on parts for which open end purchase orders and material arrival schedules had been sent to, and acknowledged by, Patent Button before termination. The District Court held that, in addition, plaintiff was entitled to commissions on a part (a lamp socket) for which an open end purchase order was sent out and acknowledged *before* termination, but for which material arrival schedules were sent out and acknowledged *after* termination of the agency contract.[2]

The issue on appeal, as stated by the District Court, is "whether plaintiff is entitled to commissions on all shipments upon material arrival schedules which were received by the defendant from GE after termination of plaintiff's contract but pursuant to open end orders procured by the plaintiff prior to his termination."

The critical provision of the contract reads:

> But, full commissions shall be paid the TSR on shipments made by the Company on all orders accepted by the Company before final termination of the agreement, even if said shipments occur after termination of this agreement.

Resolution of this issue requires interpretation of the meaning the parties intended to communicate in the phrase "on all orders accepted by the Company before final termination of the agreement."

The District Court focused on the word "order" in disregard of "accepted", the next word in the critical phrase, and concluded that the parties meant that

---

1. Appellee Robich was referred to as the technical service representative or TSR.

2. The court rejected plaintiff's claim for commissions on another part (a plastic housing) for which neither final open end purchase orders nor material arrival schedules had been acknowledged before termination. Plaintiff does not challenge this ruling on appeal.

once plaintiff had procured an open end purchase order, he was thereafter entitled to commissions on all parts shipped pursuant thereto, for an indefinite period without regard to the termination of the agency agreement. This is evident from the statement in his opinion that "[p]laintiff's work was done when he procured the open end orders".

It is a well established rule of contract law that a writing is to be interpreted as a whole. Restatement, Contracts § 235(c) (1932); see Burns v. Temperature Control Co., 52 Tenn. App. 151, 371 S.W.2d 804, 806 (1963).[3] The District Court therefore erred in concluding that the mere procurement of an open end purchase order entitled plaintiff to a commission. Acceptance by the defendant was also required by the contract.

Accordingly, we must decide what conduct of the defendant should be regarded as an "acceptance". There were two acts, either of which might be so regarded: the acknowledgment of an open end purchase order or the acknowledgment of a material arrival schedule issued under such an order.

The conduct of the parties before termination is of no assistance in this inquiry, because before the controversy arose both acknowledgments always occurred before commissions were paid.

■ Another rule of construction requires a court, in interpreting the words of a contract, to employ, whenever possible, objective standards. Words should be given their ordinary and common sense meaning. Restatement, Contracts § 235(a) (1932). In Freund v. Hodges Finishing Co., 14 F.2d 424, 425 (1st Cir. 1926), contract language virtually identical to that used here was held to be "well understood and [to] contain * * * no ambiguity." The court there regarded an accepted order as generally understood to mean one

which imposes an obligation on the contracting parties.

■ Here, after acknowledgment of an open end purchase order GE was not obligated to order or purchase and Patent Button was not obligated to manufacture or ship any parts. Plaintiff and one of defendant's officers so testified. This fact is also evident from the language of clause 16 of the conditions of purchase which, the District Court found, appeared on the reverse side of all open end purchase orders issued from "some time in 1963."

> Purchaser is not committed to purchase and Seller is not committed to sell any goods specified in this order except for the quantity that may be specified in an arrival schedule issued hereunder by Purchaser *and accepted by Seller*. [emphasis added].

Whatever the exact date of the insertion of this language in GE's conditions of purchase, it is clear that it did appear on the reverse side of the open end purchase order (exhibit #12) on the basis of which plaintiff claims the commissions in question.

The District Court erroneously held that this language was of no significance because the initial open end purchase orders pertaining to earlier revisions of the same part did not contain it. However, the insertion of clause 16 was only one of the changes made in successive open end purchase orders, and it is clear that this addition and other modifications (for example, changes in unit price) were intended to alter the legal rights and duties of the parties.

Since Patent Button had no contractual obligation to manufacture or ship parts until it received and acknowledged a material arrival schedule, we hold that no order was accepted within the meaning of the agency contract until the ac-

---

**3.** A similar rule applies to the construction of statutes. *Cf.* United States v. Consumer Scrap Iron Corp., 384 F.2d 62, 64 (6th Cir. 1967).

knowledgment was made. Therefore, plaintiff was not entitled to any commissions on any shipment by defendant to GE on any material arrival schedules acknowledged after the February 28, 1965 termination.

Accordingly, the judgment of the District Court is reversed and the case is remanded for entry of judgment consistent with this opinion.