869 F.2d 1489
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
C.E. HALE, CORPORATION, a Michigan Corporation, Plaintiff-Appellant,
v.
BUTLER POLYMET, INC., a Delaware corporation; Guthrie
Canadian Investment, Ltd., a Canadian corporation;
Butler Polymet Division, jointly and
severally, Defendants-Appellees.
 No. 88-1066.
 United States Court of Appeals, Sixth Circuit.
 Feb. 1, 1989.
 
 Before LIVELY and WELLFORD, Circuit Judges, and JOHN W. PECK, Senior Circuit Judge.
 JOHN W. PECK, Senior Circuit Judge.
 
 
 1
 Appellant C.E. Hale Corporation appeals from the decision of the district court granting summary judgment against its claim for post-termination commissions. At issue in this appeal is the interpretation of a written representation agreement. Because we also find the terms of the contract provision for post-termination commissions unambiguous, we affirm the order of District Judge Robert E. DeMascio.
 
 I.
 
 2
 In late 1973, Clifford E. Hale was appointed the sales representative for Butler Polymet, Inc. (Butler), a Delaware corporation with operations in Canada, which manufactures metal and plastic parts for the automotive industry. Hale organized C.E. Hale Corporation ("Hale Corp.") under Michigan laws in August 1975, to which he assigned the Butler job.
 
 
 3
 In August 1980, Hale Corp. and Butler entered into a written representation agreement ("the agreement") in which Hale Corp. was made the exclusive sales representative for Butler's plastic parts to Michigan, Ohio, and Indiana customers. The initial contract term was four years, renewable annually thereafter. Although the parties disagree as to the exact date of termination, they do agree that the agreement was terminated and have stipulated that in the event of reversal on appeal, the effective date of termination will be July 31, 1984.
 
 
 4
 In January 1985, Hale Corp. sought commissions pursuant to paragraph 7(iii) of the agreement, which states:
 
 
 5
 (iii) It is agreed that upon the expiration or termination date hereof, Butler will pay to Hale a commission on plastic products shipped after termination with respect to which binding acceptances of contracts, blanket orders, or purchase orders were in effect on the effective date of expiration or termination. The commission shall be payable on all such shipments made within the period of (1) year after the expiration or termination date, or during the model year for which the said contracts, blanket orders, or purchase orders were procured, whichever period is longer, provided payment for the same has been received by Butler, at fifty percent (50%) of said commission rates, it being understood that no engineering fee shall be payable thereon.
 
 
 6
 When Butler disputed the nature and scope of the post-termination commissions which Hale Corp. thought were due, Hale Corp. filed suit in the Oakland County Circuit Court of Michigan. In March, Butler removed the action to the United States District Court for the Eastern District of Michigan. Hale Corp. contends there is a latent ambiguity in the contract language and that despite the apparent clarity of the term "model year," it is entitled to commissions on a "life of the part" basis. Commissions on the life of the part is commonly understood in the industry to mean that commissions are owed on parts for as long as the order or contract runs, frequently exceeding a single year. Butler argues to the contrary that it owes commissions only on products sold from the model year for which contracts were procured on or before the date of termination.
 
 
 7
 Butler's Motion for Partial Summary Judgment[1] contends that the post-termination commission provision is clear and unambiguous that Hale Corp. is not entitled to commissions for the life of the part. Finding the contract language unambiguous, the district court without oral argument granted the motion.
 
 II.
 
 8
 This court must apply the same test on review used by the district court in granting summary judgment: viewing the evidence in the light most favorable to the party opposing the motion, does any genuine issue of material fact exist? Hand v. Central Transport, Inc., 779 F.2d 8, 10 (6th Cir.1985) (per curiam). The United States Supreme Court further clarified the standard by stating that a ruling on a motion for summary judgment necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 254 (1986). Because this diversity action was removed to the United District Court for the Eastern District of Michigan, Michigan conflict of laws rules govern. Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 496 (1941); Wells v. 10-X Mfg. Co., 609 F.2d 248, 253 (6th Cir.1979). Under Michigan law, contract interpretation is controlled by the laws of the place where the last act necessary to make it a binding contract took place. Wells, 609 F.2d at 253 (citing McLouth Steel Corp. v. Jewell Coal and Coke Co., 570 F.2d 594, 601 (6th Cir.1978), cert. dismissed, 439 U.S. 801 (1978)). Taking the facts in the light most favorable to Hale Corp., the non-moving party, we credit Hale Corp.'s allegation the agreement was signed in Michigan and, therefore apply Michigan law. Id.
 
 
 9
 In Michigan, a latent ambiguity is one " 'where the language employed is clear and intelligible and suggests but a single meaning, but some extrinsic fact or extraneous evidence creates a necessity for interpretation or a choice among 2 or more possible meanings.' " McCarty v. Mercury Metalcraft Co., 372 Mich. 567, 575, 127 N.W.2d 340, 344 (1964) (quoting Black's Law Dictionary 105 (4th ed.)), cert. denied, 380 U.S. 952 (1965). In admitting extrinsic facts or extraneous evidence to interpret the contract, however, we must comply with the parol evidence rule. Summarizing the Michigan case law to date, the Michigan Supreme Court derived rules for admissibility of extrinsic or parol evidence by which to interpret the contract:
 
 
 10
 1) Where ambiguity may exist in a contract, extrinsic evidence is admissible to prove the existence of ambiguity.
 
 
 11
 2) Where ambiguity may exist in a contract, extrinsic evidence is admissible to indicate the actual intent of the parties.
 
 
 12
 3) Where ambiguity exists in a contract, extrinsic evidence is admissible to indicate the actual intent of the parties as an aid in the construction of the contract.
 
 
 13
 Goodwin, Inc. v. Coe Pontiac, Inc., 392 Mich. 195, 209-10, 220 N.W.2d 664, 671 (1974). The Michigan Supreme Court modified the Goodwin analysis in Union Oil Co. of California v. Newton, 397 Mich. 486, 488, 245 N.W.2d 11, 12 (1976), declaring that the key question is "whether the proffered parol evidence is inconsistent with the written language." After Newton, parol evidence is only admissible to prove the existence of an ambiguity or the intent of the parties where it is not inconsistent with the written contract terms, or to show that the contract has no efficacy due to fraud, illegality, or mistake. Newton thus modifies the Goodwin standard for admitting parol evidence in the latent ambiguity context, but does not reverse it as several Michigan courts of appeal have suggested. See, e.g., NAG Enterprises, Inc. v. All State Ind., Inc., 85 Mich.App. 194, 200, 270 N.W.2d 738, 741 (1978); Michigan National Bank of Detroit v. Holland-Dozier-Holland Sound Studios, 73 Mich.App. 12, 15, 250 N.W.2d 532, 533 (1976). Compare Stine v. Continental Casualty Co., 419 Mich. 89, 114, 349 N.W.2d 127 (1984) (Ryan, J.: "[T]here being no ambiguity in the language of the insuring agreement, we are obligated to accept as the agreement of the parties the plain meaning of the words used"); American Anodco, Inc. v. Reynolds Metals Co., 743 F.2d 417 (6th Cir.1984).
 
 
 14
 Applying Goodwin, supra, as modified by Newton, supra, we find that extrinsic evidence is not admissible to vary the plain terms of the contract. Hale Corp. has urged that the contract term "model year" is subject to a latent ambiguity in light of the fact that most purchase orders either cover more than one year or extend automatically for subsequent model years. The standard for determining the ambiguity of a challenged contract term is whether it is susceptible of more than one reasonable interpretation. Raska v. Farm Bureau Mut. Ins. Co. of Michigan, 412 Mich. 355, 362, 314 N.W.2d 440, 441 (1982). We conclude that the contract language unambiguously creates a right in Hale Corp. to commissions for one year or one model year for the contracts in place at the time of termination, whichever is longer. To hold otherwise would permit inconsistent parol evidence to vary the clear limitation of the contract provision.
 
 
 15
 Appellant Hale Corp. argues further that the first sentence of paragraph 7(iii) entitles it to post-termination commissions on all "plastic products shipped after termination with respect to which binding acceptances of contracts, blanket orders, or purchase orders were in effect on the effective date of expiration or termination." This, Hale Corp. contends, entitles it to commissions on a life of the part basis. We find Appellant's argument without merit, since it reads the sentence out of context. We conclude that the paragraph, when read as a whole, entitles Hale Corp. to commissions on the greater of one year or the model year. The first sentence of the paragraph establishes the right to commissions, while the second sentence limits the amount of the commission due. Our reading is supported by a decision of this court interpreting a substantially similar contract. In Robich v. Patent Button Co. of Tennessee, Inc., 417 F.2d 890, 891 (6th Cir.1969), this court was confronted with a dispute over post-termination commissions under a contract requiring payment of commissions "on all shipments made by the Company on all orders accepted by the Company before final termination of the agreement, even if said shipments occur after termination of the agreement." We held, taking the contract in its entirety, that mere acknowledgment of an open-ended purchase order was insufficient to bind the Company to pay post-termination commissions on subsequent shipments. Id. at 892-93. The open-ended purchase orders of Robich, supra, are similar to the automatically extending purchase orders at issue here. Therefore, we likewise conclude that the first sentence of paragraph 7(iii) does not entitle Hale Corp. to commissions on shipments for multiple model years.
 
 
 16
 On these bases and because a judge experienced in the law of the state has determined that under its laws no ambiguity exists in this contract, we are not inclined to disturb the judgment. Hardaway Construction Co., Inc. v. United States, 852 F.2d 174, 176 (6th Cir.1988). Accordingly, the judgment of the district court granting partial summary judgment on this issue involving post-termination commissions is affirmed.