143 F.3d 1033
 M & C CORPORATION, a Michigan corporation, d/b/a Connelly
Company, Plaintiff-Appellant,
v.
ERWIN BEHR GMBH & CO., KG, a foreign corporation, Defendant-Appellee,
Heinz Etzel; Michel Karkour; and Sami Sarkis, Defendants.
 No. 96-2571.
 United States Court of Appeals,
Sixth Circuit.
 Argued March 11, 1998.
Decided May 12, 1998.
 
 Russ E. Boltz (argued and briefed), John C. Louisell (briefed), Cross Wrock, Detroit, MI, for Plaintiff-Appellant.
 Larry J. Saylor (argued), Elisa M. Angeli (briefed), Miller, Canfield, Paddock & Stone, Detroit, MI, for Defendant-Appellee.
 Before: KEITH, SUHRHEINRICH, and DAUGHTREY, Circuit Judges.
 KEITH, J., delivered the opinion of the court, in which SUHRHEINRICH, J., joined. DAUGHTREY, J. (p. 1041), delivered a separate opinion concurring in part and dissenting in part.
 OPINION
 KEITH, Circuit Judge.
 
 
 1
 Plaintiff-Appellant, M & C Corporation ("M & C"), appeals an order from the district court granting Defendant-Appellee, Erwin Behr's ("Behr"), motion for stay of further enforcement proceedings pending arbitration. On appeal, M & C contends that: 1) the district court erred in granting Behr's motion for stay; 2) the district court erred in finding that the arbitrator had not previously addressed the issue Behr now claims is subject to arbitration; and 3) in the event of any ambiguities, the district court erred in failing to remand the issue back to the original arbitrator. Conversely, Behr claims that this court is without jurisdiction to hear this appeal. For the reasons discussed herein, we REVERSE the decision of the district court.
 
 I.
 
 2
 This case comes before this Court for the second time on appeal. Familiarity with our previous decision, see M & C Corp. v. Erwin Behr, 87 F.3d 844 (6th Cir.1996) ("Behr I"), is presumed. We briefly summarize the pertinent facts. M & C Corporation, a Michigan Corporation doing business as the Connelly Company, entered into a contract on March 18, 1985, with Behr, a German limited liability corporation. According to the terms of the parties' agreement, M & C was to serve as the exclusive sales agent for Behr in the United States and Canada for a period of at least five years for the sale of wood interior panels for luxury automobiles. The contract specified that the "agreement shall be interpreted with and governed by the laws of the State of Michigan," and that "[a]ll disputes arising in connection with the present contract shall be finally settled under the Rules of the Court of Arbitration of the International Chamber of Commerce by one or more arbitrators appointed in accordance with the said Rules."
 
 
 3
 In 1991, Behr, in accordance with the provisions of the contract, terminated the parties' agreement. However, when, pursuant to contract, Behr failed to forward to M & C the commissions earned for some of the sales and client development work it had performed, M & C brought suit in the federal district court. Pursuant to the parties' agreement, the district court stayed any judicial proceedings and ordered the parties to submit the dispute to arbitration.
 
 
 4
 Following the issuance of the Arbitration Award, M & C sought confirmation of the award in the federal district court pursuant to 9 U.S.C. § 207, and in accordance with the provisions of the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, otherwise known as the New York Convention. See 9 U.S.C. § 201. On August 15, 1994, the district court adopted the recommendation of the magistrate judge and confirmed and entered judgment on awards one through six and eight through ten. On March 20, 1995, the district court once again adopted the magistrate judge's recommendation and confirmed and entered judgment on awards seven and eleven.
 
 
 5
 In Behr I, we affirmed the judgment of the district court in confirming the arbitral award. However, while Behr I was pending before this Court, M & C moved in the district court to enforce various arbitral awards, including award eight, which is the subject of dispute in this appeal. The district court found that Behr had failed to specifically perform the obligations imposed under award eight and that as a result, Behr's actions "directly violate[d] the terms of the arbitral award and this court's [district court] August 15, 1994 order confirming that award." Behr was thereafter held in contempt. JA, 232.
 
 
 6
 Subsequent to this court's judgment to affirm in Behr I, Behr paid M & C $2,165,871.00, in satisfaction of awards four, five, seven, ten and eleven. However, Behr continues to contest the amount due under award eight. Award eight does not require the payment of a specific monetary amount, rather the award requires Behr to provide M & C with documentation for sales of certain products and to pay commissions on the future sales of these products. The contract referenced in award eight requires Behr to pay commissions on "all new orders which are not renewal or extensions orders, received from customers within three years following the date of termination." JA, 128.
 
 
 7
 Behr sought stay of enforcement proceedings "because the amounts owing on that disputed award have not been reduced to judgment." Behr contends that the parties disagree over the interpretation of the word "order" and that because the issue was not addressed by the arbitrator, a stay is appropriate.
 
 
 8
 The district court in its initial determination, ruled that a stay of enforcement pending arbitration was not warranted because Behr had not raised a good faith dispute that had not been previously decided in arbitration. However, upon Behr's motion for reconsideration, the district court determined that Behr had raised a good faith issue of what constitutes an "order" under the commission contract, and that the prior arbitration award had not addressed that issue. M & C appeals, and this Court now reverses, the district court's order.
 
 II.
 
 9
 As an preliminary matter, Behr argues that this court lacks jurisdiction to entertain an appeal from the district court's order staying enforcement proceedings and compelling arbitration. Behr's argument must fail.
 
 
 10
 Section 16 of the Federal Arbitration Act governs when a party may seek appellate review.[1] Behr contends that the district court's order was an interlocutory order, not subject to immediate appeal. Conversely, M & C contends that the district court's order was final and ripe for immediate review.
 
 
 11
 A final decision is one which " 'ends the litigation on the merits and leaves the court nothing to do but execute the judgment.' " Arnold v. Arnold Corp., 920 F.2d 1269, 1275 (6th Cir.1990) (quoting Catlin v. United States, 324 U.S. 229, 233, 65 S.Ct. 631, 633, 89 L.Ed. 911 (1945)). Further, a final order is one which " 'dismisses an action in deference to arbitration' and enters a final judgment." Id. Conversely, a stay of proceedings is generally considered interlocutory. See 9 U.S.C. § 3.
 
 
 12
 Behr first relies on Arnold v. Arnold, 920 F.2d 1269, 1275 (6th Cir.1990), to support its claim that a grant of stay is interlocutory and not appealable. However, Arnold is markedly distinguishable from the case at bar. In Arnold, upon the district court's failure to explicitly rule on a party's motion to stay proceedings pending arbitration, this Court found that it was difficult to determine whether the district court's order granting a motion to compel arbitration was an interlocutory order or final order. This Court, therefore, remanded for clarification, and upon remand, the district court entered an "Order of Clarification" and granted appellee's motion to compel arbitration and dismissed Arnold's first amended complaint. The district court also ordered the clerk of court to enter final judgment in accordance with the court's order. It was pursuant to these acts that this Court stated:
 
 
 13
 According to the legislative history of section 15, a final order is one which dismisses "an action in deference to arbitration" and enters a final judgment.[2] The district court's order of clarification meets both of these requirements. Moreover, a decision of the district court is final if it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment."
 
 
 14
 Arnold, at 1275.
 
 
 15
 The distinguishing factor in this case is that the district court granted a stay of enforcement pending arbitration. Unlike Arnold where the motion for stay pending arbitration was granted at the very onset of the filing of the complaint, here, M & C filed its complaint; Behr sought arbitration; the district court granted a motion for stay pending arbitration; arbitration was held; awards were granted in favor of M & C; the district confirmed and entered judgment on those awards; this Court affirmed those arbitration awards; and all that was left to be done was for the district court to "execute the judgment."
 
 
 16
 This is not an instance where "the trial of the action" was being stayed until arbitration was held; rather, arbitration was completed, confirmation was granted, and judgment was entered. See 9 U.S.C. § 3. It is not as Behr contends that the parties will arbitrate what constitutes an order, and upon such a determination by the arbitrator, the parties will seek to "lift the stay, seek confirmation of the decision ... and enforce the award once it is confirmed." Appellees Brief, 24. The district court in its order to stay enforcement did not vacate, set aside or modify its earlier ruling of confirmation and judgment. Indeed, it only sought to clarify the award for the limited purpose of assuring an accurate execution of the judgment.
 
 
 17
 Next, Behr argues that other circuits in determining whether a decision affecting arbitration is a "final decision," have distinguished arbitration actions that are "independent" from those that are "embedded" in other matters. Specifically, Behr asserts that M & C is appealing an interlocutory order that is "embedded" in the substantive claims against Behr, and it is therefore subject to arbitration.
 
 
 18
 Several circuits have determined that when deciding whether and order affecting arbitration is final or interlocutory:
 
 
 19
 [M]ost courts distinguish between arbitration actions that are "independent" and those that are "embedded" among other claims. Generally, if the only issue before the court is the dispute's arbitrability, the action is considered independent and a court's decision on that issue constitutes a final decision. See, e.g., Matter of Chung and President Enters. Corp., 943 F.2d 225, 228 (2d Cir.1991). If however, the case includes other claims for relief, an arbitrability ruling does not "end the litigation on the merits," but is considered interlocutory only. See, e.g., Construction Laborers Pension Trust v. Cen-Vi-Ro Concrete Pipe & Prods. Co., Inc., 776 F.2d 1416, 1420 n. 5 (9th Cir.1985); Wilson Wear, Inc. v. United Merchants & Mfrs., Inc., 713 F.2d 324, 326 (7th Cir.1983); Langley v. Colonial Leasing Co. of New England, 707 F.2d 1, 4 (1st Cir.1983).
 
 
 20
 McDermott Intern., Inc. v. Underwriters At Lloyds Subscribing to Memorandum of Ins. No. 104207, 981 F.2d 744, 747 (5th Cir.1993).
 
 
 21
 Even adopting the approach used by other circuits, the district court's order cannot be said to be "embedded" because the clarification sought by the district court served solely to ensure an accurate execution of the eighth award--the substance of which had already been determined by the arbitrator. As a matter of form, the "stay of proceedings," appears interlocutory, but, in essence, it is an final order staying the enforcement of a judgment that has already been arbitrated, confirmed, judgment entered, and affirmed by this court.
 
 
 22
 This finding is not inconsistent with our ruling in Arnold, or the purposes behind the Federal Arbitration Act--to promote arbitration over litigation. See Arnold, 920 F.2d at 1274-75 ( [A]ppealability does not turn solely on the policy favoring arbitration.... These appeals preserve the general policy that appeals should be available where there is nothing left to be done in the district court."); see also 134 Cong.Rec. S16284-01. As the only thing left before the district court to do is to enforce the judgment, this Court does have jurisdiction over this appeal.
 
 III.
 
 23
 Having determined that this court has jurisdiction to hear this appeal, M & C claims that the district court erred in finding that the question of "what constitutes an order" is a new issue, subject to arbitration.
 
 
 24
 A determination of the arbitrability of a dispute is subject to de novo review. Alascom, Inc. v. ITT North Electric Co., 727 F.2d 1419, 1422 (9th Cir.1984). The law is well established that federal courts have jurisdiction to enforce arbitrations awards. United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). It is further established that courts may not go beyond the arbitration award to decide questions that the arbitrator did not decide. Id. at 599, 80 S.Ct. at 1362. An ambiguous award may not be enforced but should be remanded to the arbitrator. Id. at 597-98, 80 S.Ct. at 1361. However, if the arbitrator's opinion and award, read together, are not ambiguous, the award should be enforced. Int'l Brotherhood of Electrical Workers, Local 369 v. Olin Corp., 471 F.2d 468 (6th Cir.1972).
 
 
 25
 The district court in granting Behr's motion for reconsideration agreed with Behr's proposition that the original arbitrator only focused on determining the specific parts for which M & C were to receive prospective commissions. The district court stated:
 
 
 26
 It is beyond dispute that the question of whether Erwin Behr's obligation to pay commissions on orders received within three years of the termination of the contract, irrespective of when that commission was actually paid, was decided by Arbitrator Berkeley in the eighth award. Erwin Behr correctly submits, and this court agrees, however, that the question of what constitutes an order under paragraph 7.3 of the commission contract was not addressed in the prior arbitration. Accordingly, because that dispute arise out of, and requires interpretation of, the commission contract, it is subject to arbitration. Under the authorities cited in this court's August 20, 1996 order, a stay of the plaintiff's efforts to enforce the eighth arbitral award is warranted pending arbitration of the dispute surrounding the meaning of the "order ... received from the Customers within three years of termination" language in paragraph 7.3 of the commission contract.
 
 
 27
 JA, 504-05.
 
 
 28
 The eighth award which is the subject of dispute on appeal, provides, in relevant part:
 
 
 29
 Behr shall specifically perform all of the terms of the Contract remaining to be performed by it including:
 
 
 30
 1. Performance of Behr's obligation under Clause 6(e) of the contract by providing, not later than the fifteenth day of the month following the month in which shipment of any order is made by Behr, copies of all purchase orders acceptances and invoices for products (as defined in the contract) sold in the territory (as defined in the agreement).
 
 
 31
 2. Payments of all commissions due to Connelly, without offset of any kind other than reductions in or refund of the purchase price due to returns of products or product deficiency due to quality or as a result of nonpayment to Behr of the corresponding net invoice price (as defined in the contract), not later than the fifteenth day of the month in which shipment is made of any order of products in the territory and specifically including the following products:
 
 
 32
 1991 Model Year Business....
 
 
 33
 1992 Cadillac Business....
 
 
 34
 1994 Cadillac "K" Car Series....
 
 
 35
 JA, 172-73.
 
 
 36
 In reaching its conclusion as to what commissions M & C were entitled to receive, the arbitrator stated:
 
 
 37
 The main issue is the determination of which products are subject to the payment of commission under the contract. The controversy between the parties centres [sic] around the programs of General Motors which have been designated "1994 K Special." The starting point for the analysis must be the contract. The relevant clauses of the contract are 7.2, 7.3, and 7.4. Clause 7.2 provides for the payment of commission on extension or renewal orders for items which were already supplied during the contract but which were received following the date of termination. That clause is easily interpreted. Clause 7.3 requires more analysis. It states: "... the Company ... shall also be obligated to pay the Agent commission on all new orders which are not renewal or extension orders, received from customers within three years following the date of termination ... but which were actively solicited by the Agent from the Customers prior to the date of said termination...." Clause 7.4 then goes on to say: " 'actively solicited' orders shall mean such orders which may reasonably be regarded to have materialized mainly as a result of the negotiations and sales efforts of the Agent and proven by the Agent to the Company...." It is to be noted that the criterion is materialization of orders as a result of efforts; it is immaterial that there should have been design changes in the parts concerned after the application of the efforts and also that the business could have been lost by the component supplier because of unacceptable pricing or bad quality.
 
 
 38
 * * *
 
 
 39
 I find that Connelly has provided a sufficient body of the required documentary evidence to fulfil [sic] all the requirements of Clause 7.4 and that, included within the scope of the products subject to commission, are all products under the 1994 K Special program.
 
 
 40
 JA, 171-72.
 
 
 41
 The essence of Behr's contention revolves around the use of purchase orders and alleged "release orders." Behr contends that a purchase order merely contains a list of the general terms of future purchases by a customer, and that the customer later issues a release order for a specific number of parts to be shipped on designated dates. Behr maintains that to the extent any release orders were issued more than three years following the termination of the contract, M & C is not entitled to receive commissions.
 
 
 42
 Behr in its brief requesting reconsideration of its motion for stay concedes that "the receipt of payment from customers or 'the fact that commissions were not received within three years' [does not] absolve Behr of commission liability." JA, 466. Rather, it disputes the finding of "what constitutes an order ... received within three years of termination." Ibid. Behr states that a 'blanket' purchase order "contains the general terms on which the customer will purchase parts, including the price per unit," and that "the actual order for parts is made by periodic 'releases' that specify a number of parts and a date for shipment." Appellees Brief, 30. Behr further states that "a blanket purchase order alone would not trigger M & C's right to receive a commission, because it does not evidence an actual sale of parts. M & C's commission must be tied to a payment of money by the customer...." Ibid.
 
 
 43
 However, a reading of the arbitrator's award, together with its opinion, leads this Court to find that the award is not ambiguous, and the district court's remand to arbitration was not proper.
 
 
 44
 The arbitrator's opinion clearly determined that pursuant to the parties' agreement, the payment of commissions is tied to the receipt of "all new orders ... received from customers within three years following the date of termination .... but which were actively solicited by [M & C] from the Customers prior to the date of said termination." (Emphasis added). As read, there is a two-fold requirement in the arbitrator's award: 1) the "order" must be received prior to the three years following termination of the contract; and 2) such an order must have materialized as a result of the "active[ ] solicit[ation]" by M & C prior to the termination of the contract.
 
 
 45
 The only "order" the arbitrator could have referred to was the form entitled "Purchase Order," not a form entitled "Material Release." The "Purchase Order" is the only order that M & C had direct involvement in "actively solicit[ing]" from customers. Whereas, it is based entirely on the customer's needs when the goods ordered via the Purchase Order are "released." The arbitrator determined, and this court agrees, that the primary intent of the parties' agreement was to provide M & C the equitable relief of specific commissions for work that it had actively solicited. Thus, as the only "order" that M & C had any involvement in actively soliciting were Purchase Orders, which were also the only "orders" that were before the arbitrator to consider, the arbitrator has necessarily determined that "new orders" refers to new "Purchase Orders."
 
 
 46
 Further, enforcement of a contract will rarely be denied because of indefiniteness or missing details. See Butler v. Attwood, 369 F.2d 811 (6th Cir.1966)("Courts do not favor the destruction of contracts because of indefiniteness and hold that uncertainty may be removed by subsequent acts, conduct, declarations, or agreements of the parties.")
 
 
 47
 Behr also contends that this is a good faith dispute subject to further arbitration because the issue did not arise until after the three-year time period had expired and M & C had claimed commissions for parts that were "released" after that three year period. It is immaterial when the dispute arose because the Purchase Orders were actively solicited prior to termination, and received prior to the three year expiration. The fact that the orders were not "release[d]" until after the time period had expired, does not, pursuant to the arbitrator's ruling, absolve Behr from liability.[3]
 
 
 48
 Further, even if it is as Behr contends that the payment of commissions is tied to "payment of money by the customer," this payment of money is also tied to when the "Material Release" is issued. Therefore, it necessarily follows that a "Material Release," itself, is also tied to the payment of commissions. And the arbitrator's award clearly indicates that the payment of commissions is not subject to the three-year limitation.
 
 
 49
 When Behr challenged the continued payment of commissions to M & C after termination of the contract, the arbitrator clearly stated,
 
 
 50
 "I have accepted the evidence which shows that an agent, like Connelly [M & C], is involved in significant effort and expenditure before commission accrues [i.e. when a "Material Release" is issued]. It obtains the business for its principal by means of such activity which it undertakes in the hope of future award. The contract scheme in clause 7 for the continuance of commission after termination but the cessation of the duty to service at that point seems just and natural and I accept the evidence that commission payment during "life of [the] part" is customary in the industry."
 
 
 51
 JA, 155. (Emphasis added).
 
 
 52
 Thus, even if we assume Behr's proposition to be true, it was still the active solicitation of M & C prior to contract termination which resulted in the receipt of Purchase Orders during the three-year time frame, and it was the release of those "new [purchase] orders" which triggered the receipt of money from the customer and the "commission payment[s] during 'life of [the] part.' "As the Arbitration Award is clear, the district court erred in granting Behr's motion for stay of enforcement pending arbitration. All remaining claims by M & C are now and hereby rendered moot.
 
 
 53
 The judgment of the district court is REVERSED, and this case is REMANDED for an interpretation by the district court consistent with this opinion.
 
 CONCURRING IN PART, DISSENTING IN PART
 
 54
 MARTHA CRAIG DAUGHTREY, Circuit Judge, concurring in part and dissenting in part.
 
 
 55
 I concur in the majority's conclusion that this court has jurisdiction over M & C's appeal from the district court's order staying enforcement proceedings pending arbitration. However, I cannot agree with the majority that the arbitration award is "clear." I conclude that Behr has raised an arbitral issue that was not addressed in the prior arbitration and, therefore, I would affirm the district court's stay pending arbitration of the new issue. Thus, I respectfully dissent from Part III of the majority's opinion.
 
 
 56
 The Eighth Award provides only that Behr "shall specifically perform all the terms of the Contract remaining to be performed by it including ... payment of all commissions due to [M & C]." The award refers to the commission contract, which requires the payment of commissions for "new orders ... received from customers within three years following the date of termination [of the contract,]" but it simply does not address the meaning of "orders," which is now vigorously disputed by M & C and Behr.[1]
 
 
 57
 Because the award did not consider what constitutes an "order" under the contract, in order to determine the amount of commissions due, the court must go outside the award to interpret it, which it cannot do. Cleveland Paper Handlers v. E.W. Scripps Co., 681 F.2d 457, 459-60 (6th Cir.1982) (In enforcement actions, "courts may not beyond an award to decide questions that the arbitrator did not decide."). That is, in order to resolve this new dispute, the court would have to construe the contract, which is precisely what this court must not do, because the parties agreed that any dispute arising under the contract is subject to arbitration.[2] Therefore, I believe that the Eighth Award is unenforceable and that the dispute over the meaning of "orders" is a new dispute subject to arbitration.
 
 
 58
 I am led to this conclusion by the Supreme Court's pronouncement that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Moses H. Cone Memorial Hosp. v. Mercury Constr. Co., 460 U.S. 1, 24-25, 103 S.Ct. 927, 941-42, 74 L.Ed.2d 765 (1983). This "healthy regard for the federal policy favoring arbitration," combined with the court's lack of jurisdiction under the New York Convention to modify an international arbitral award, 9 U.S.C. § 207, requires that the meaning of "orders" as used in the Eighth Award be arbitrated instead of judicially determined. Id. at 24, 103 S.Ct. at 941.
 
 
 59
 In sum, because the meaning of "orders" in the commissions contract was not addressed in the arbitration, the amount due under the Eighth Award can only be established through further arbitration. For this court, or the district court, to decide what the arbitrator did not, inappropriately undermines the federal policy favoring arbitration.
 
 
 
 [1]
 § 16. Appeals
 (a) An appeal may be taken from--
 (1) an order--
 (A) refusing a stay of any action under section 3 of this title,
 (B) denying a petition under section 4 of this title to order arbitration to proceed,
 (C) denying an application under section 206 of this title to compel arbitration,
 (D) confirming or denying confirmation of an award or partial award, or
 (E) modifying, correcting, or vacating an award;
 (2) an interlocutory order granting, continuing, or modifying an injunction against an arbitration that is subject to this title
 (3) a final decision with respect to an arbitration that is subject to this title.
 (b) Except as otherwise provided in section 1292(b) of title 28, an appeal may not be taken from an interlocutory order--
 (1) granting a stay of any action under section 3 of this title;
 (2) directing arbitration to proceed under section 4 of this title;
 (3) compelling arbitration under section 206 of this title; or
 (4) refusing to enjoin an arbitration that is subject to this title.
 9 U.S.C. § 16(b).
 
 
 [2]
 Two sections were enacted in 1988 as section number 15. Subsequent to a 1990 amendment that separated them, this section on appeals was reclassified as section 16. Practice Commentary to 9 U.S.C.A § 15
 
 
 [3]
 Behr has provided this Court with three Sixth Circuit cases, Chicago Fineblanking Corp. v. D.J. Cotter & Co., Nos. 96-1994, 96-2057, 1998 WL 24998, at * 1 (6th Cir. Jan. 14, 1998); Precision Rubber Products, Inc. v. George McCarthy, Inc., 872 F.2d 187 (6th Cir.1989); Robich v. Patent Button Co. of Tennessee, Inc., 417 F.2d 890 (6th Cir.1969), where it attempts to persuade this Court that there is a good faith confusion between purchase orders, releases, and when commissions are due. However, this Court is not persuaded that the arbitrator was not aware of, or failed to address any alleged differences. For example, award eight arises under Article Five of the Arbitration Award, and is entitled "Equitable Relief." When the arbitrator did its analysis of what commissions were equitably due to M & C, it specifically stated, "The relevant clauses of the contract are 7.2, 7.3, and 7.4." JA, 171. Those clauses specifically deal with the compensation of commissions to M & C because of their active work and solicitation of "new orders." The arbitrator specifically left out clause 7.1 which required commission payments on "all orders obtained by the Agent [M & C] and accepted in writing by the Company [Behr]." This is also the distinguishing factor found in Robich, as well as in Precision Rubber and Chicago Fineblanking, which follows the reasoning in Robich. Conversely, the arbitrator determined that only clauses 7.2, 7.3, and 7.4 were applicable for "new orders" obtained by M & C, and that such orders must have been "actively solicited by the Agent [M & C]" in order for M & C to be entitled to the "equitable relief" of commissions. Again, as the only "order" that M & C actively solicits is a "Purchase Order," then M & C is entitled to commissions therefrom, so long as such orders were received within the three-year window. The fact that the release is issued after that time does not deny M & C the right to commissions for work that it "actively solicited." As the arbitrator stated, "[i]t is to be noted that the criterion is materialization of orders as a result of efforts .... [and] I find that Connelly has provided a sufficient body of the required documentary evidence to fulfil [sic] all the requirements of Clause 7.4 and that, included within the scope of the products subject to commission, are all products under the 1994 K Special program." (Emphasis added). Further, the arbitrator knew, expected, and realized that "[M & C] obtains the business for [Behr] by means of such activity which it undertakes in the hope of future award." (i.e. future releases = future commissions). (Emphasis added)
 
 
 [1]
 The district court wrote: "[T]he question of what constitutes an order under paragraph 7.3 of the commission contract was not addressed in the prior arbitration." Presumably, the arbitrator did not focus on what constitutes an order because neither party raised it as a point of dispute. Instead, the arbitrator focused on which products were covered by the commission agreement, and merely ordered specific performance of the commission provisions of the contract: "The main issue is the determination of which products are subject to the payment of commission under the contract. The controversy between the parties centres [sic] around the special programs of the General Motors which have been designated '1994 K Special.' "
 The parties now differ markedly in their interpretations of the contract provision. Behr contends that for recurring shipments of parts, the "order" under the contract is made when the customer issues the periodic releases specifying the number of parts and the date of shipment. Accordingly, Behr concludes, M & C would be entitled to commissions only on parts for which releases were received within three years of the termination of the contract. M & C, in contrast, argues that it is entitled to commissions for all releases made from blanket purchase orders, for the life of the part.
 
 
 [2]
 The contract specified that "[a]ll disputes arising in connection with the present contract shall be finally settled under the Rules of the Court of Arbitration of the International Chamber of Commerce by one or more arbitrators appointed in accordance with the said Rules."