*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 05a0267p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

M & C CORPORATION,

　　　　　　　　　*Plaintiff-Appellee,*

　　*v.*

No. 04-1557

ERWIN BEHR GMBH & CO., KG,

　　　　　　　　　*Defendant-Appellant.*

>

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 91-74110—Paul V. Gadola, District Judge.

Argued: April 28, 2005

Decided and Filed: June 17, 2005

Before: KEITH, MERRITT, and CLAY, Circuit Judges.

---

**COUNSEL**

**ARGUED:** Larry J. Saylor, MILLER, CANFIELD, PADDOCK & STONE, Detroit, Michigan, for Appellant. Russ E. Boltz, RUSS E. BOLTZ P.C., Rochester, Michigan, for Appellee. **ON BRIEF:** Larry J. Saylor, Elisa M. Angeli, MILLER, CANFIELD, PADDOCK & STONE, Detroit, Michigan, for Appellant. Russ E. Boltz, RUSS E. BOLTZ P.C., Rochester, Michigan, John C. Louisell, TIMMIS & INMAN, Detroit, Michigan, for Appellee.

　　　　CLAY, J., delivered the opinion of the court, in which KEITH, J., joined. MERRITT, J. (p. 12), delivered a separate dissenting opinion.

---

**OPINION**

---

　　　　CLAY, Circuit Judge. According to the United States Supreme Court," [a]rbitration agreements allow parties to avoid the costs of litigation." *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 123 (2001). This litigation proves the exception to that rule. This is now the fourth appeal to this Court regarding an arbitration award that was finalized in 1994, three years after Defendant Edwin Behr GmbH & Co. ("Behr") terminated its contract with Plaintiff M & C Corporation, who had been acting as the exclusive sales agent for Behr's automotive parts. *See M & C Corp. v. Erwin Behr GmbH & Co., KG*, 87 F.3d 844 (6th Cir. 1996) ("*Behr I*"); *M & C Corp. v. Erwin Behr GmbH & Co., KG*, 143 F.3d 1033 (6th Cir. 1998) ("*Behr II*"); *M & C Corp. v. Erwin Behr GmbH & Co., KG*, 326 F.3d 772 (6th Cir. 2003) ("*Behr III*").

In *Behr III*, this Court reversed the district court's order holding that Award Eight of the arbitrator's 11 part award is ambiguous with regard to the amounts Behr owes M & C. The Eighth Award addresses M & C's claim that the parties' contract entitles M & C to commissions on customer orders for Behr parts that were placed after Behr terminated its contract with M & C. This Court instructed the district court to specify the particular ambiguity in the Eighth Award. On remand, via an order dated March 29, 2004, the district court identified a purported ambiguity in the award and again remanded to the arbitrator to (1) determine the exact scope of the commissionable products under the Eighth Award and (2) to state what payments, if any, are due to each party from the other under that award.

For the reasons stated below, we **REVERSE** the district court's order, which found an ambiguity in the arbitration award that purportedly justified a remand to the arbitrator. All of the potential products for which M & C is seeking commissions were ordered by Behr's customers more than three years after Behr terminated its contract with M & C. Under the plain language of the parties' contract, M & C is not entitled to commissions on these orders, even assuming that M & C actively solicited these orders during the contract period. Moreover, because the issue of commissionable products can be resolved through the unambiguous language of the contract, the further question of how much money, if any, each party owes the other can be readily determined in a judicial forum. A remand to the district court, however, would only invite further delay in this protracted litigation. Therefore, this Court shall retain jurisdiction over this case. Within 30 days of this opinion's issuance, the parties shall submit a joint stipulation reflecting the amounts owed or overpaid pursuant to Award Eight. If the parties cannot agree on these amounts, they are directed to advise the Court in writing of their respective positions. After receipt of the joint stipulation or the opposing briefs, the Court will enter an appropriate final judgment resolving the issue of payments owed under the contract.

# I
# BACKGROUND

A complete factual background is more fully set forth in this Court's three prior published opinions. We reiterate only those facts necessary to understand the reasoning in this opinion.

Behr, a German limited liability entity, entered into a contract on March 18, 1985, with M & C Corporation, whereby M & C was to serve as the exclusive sales agent for Behr in the United States and Canada for a period of at least five years for the sale of wood interior panels for luxury automobiles. The contract specifies that the "agreement shall be interpreted with and governed by the laws of the State of Michigan," and that "[a]ll disputes arising in connection with the present contract shall be finally settled under the Rules of the Court of Arbitration of the International Chamber of Commerce by one or more arbitrators appointed in accordance with the said Rules."

On March 18, 1991, Behr terminated the agreement in accordance with the provisions of the contract. When Behr failed to forward to M & C the commissions it had earned for some sales and client development work, M & C filed suit in federal district court seeking damages for breach of contract, improper termination of contract, and tortious interference with contractual relations. The district court stayed any judicial proceedings and ordered the parties to submit the dispute to arbitration as required by the contract. Pursuant to the Rules of the Court of Arbitration of the International Chamber of Commerce, a British arbitrator was then assigned to the case and London, England, was designated as the neutral site of the proceedings. On March 1, 1994, after more than one year of submissions of documentation, arguments, and hearings, the arbitrator issued 11 awards.

Behr appealed the arbitrator's awards to the district court, which the court confirmed on August 15, 1994. On appeal, this Court affirmed the arbitrator's award of $683,761 in damages pursuant to a Michigan statute (MICH. COMP. LAWS § 600.2961(5)(b)) that assesses against a

defendant an amount equal to two times the value of commissions due but intentionally not paid to a sales representative, and $335,793.47 in legal fees, costs, and expenses. *Behr I*, 87 F.3d at 846-47, 850-51. Behr did not contest the award of $956,768 in damages and interest payments for commissions that it wrongfully withheld from M & C. *Id.* at 847.

While *Behr I* was pending before this Court, M & C moved in the district court to enforce various arbitral awards, including Award Eight. The district court found that Behr had failed to specifically perform the obligations imposed under Award Eight and that as a result, Behr's actions "directly violate[d] the terms of the arbitral award and the district court's August 15, 1994 order confirming that award." Behr was thereafter held in contempt.

Subsequent to this court's judgment to affirm in *Behr I*, Behr paid M & C $2,165,871, in satisfaction of Awards Four, Five, Seven, Ten and Eleven. Behr continued to contest, however, the amount due under Award Eight. Award Eight does not require the payment of a specific monetary amount; rather, the award requires Behr to provide M & C with documentation for sales of certain products and to pay commissions on the future sales of these products. Clause 7.3 of the parties' contract referenced in Award Eight requires Behr to pay commissions on "all new orders which are not renewal or extensions orders, received from customers within three years following the date of termination."

Behr sought a stay of enforcement proceedings "because the amounts owing on that disputed award have not been reduced to judgment." Behr contended that the parties disagreed over the interpretation of the word "order" and that because the issue was not addressed by the arbitrator, a stay was appropriate. In its initial determination, the district court ruled that a stay of enforcement pending arbitration was not warranted because Behr had not raised a good faith dispute that had not been previously decided in arbitration. Upon Behr's motion for reconsideration, however, the district court determined that Behr had raised a good faith issue of what constitutes an "order" under the commission contract, and that the prior arbitration award had not addressed that issue.

Behr had argued to the district court that the term "order" was ambiguous because it could mean either a "purchase order" or a "release order." A purchase order contains a list of the general terms (including price per unit) of future purchases by a customer, whereas the customer must issue a release order for a specific number of parts to be shipped on designated dates. It was Behr's position that to the extent any release orders were issued more than three years following the termination of the contract, M & C was not entitled to receive commissions, as dictated by Clause 7.3. The district court accepted Behr's argument that the term "orders" in Clause 7.3 is ambiguous and granted Behr's motion for stay of further enforcement proceedings pending resolution of that ambiguity in arbitration.

On appeal in *Behr II*, this Court reversed the district court's decision to remand the case to the arbitrator. We held:

> [A] reading of the arbitrator's award, together with its opinion, leads this Court to find that the award is not ambiguous, and the district court's remand to arbitration was not proper.
>
> The arbitrator's opinion clearly determined that pursuant to [Clause 7.3 of] the parties' agreement, the payment of commissions is tied to the receipt of "all new orders… received from customers within three years following the date of termination… *but* which were actively solicited by [M & C] from the Customers prior to the date of said termination." (Emphasis added). As read, there is a two-fold requirement in the arbitrator's award: 1) the "order" must be received prior to the three years following termination of the contract; and 2) such an order must have

materialized as a result of the "active[ ] solicit[ation]" by M & C prior to the termination of the contract.

> The only "order" the arbitrator could have referred to was the form entitled "Purchase Order," not a form entitled "Material Release." The "Purchase Order" is the only order that M & C had direct involvement in "actively solicit[ing]" from customers. Whereas, it is based entirely on the customer's needs when the goods ordered via the Purchase Order are "released." The arbitrator determined, and this court agrees, that the primary intent of the parties' agreement was to provide M & C the equitable relief of specific commissions for work that it had actively solicited. Thus, as the only "order" that M & C had any involvement in actively soliciting were Purchase Orders, which were also the only "orders" that were before the arbitrator to consider, the arbitrator has necessarily determined that "new orders" refers to new "Purchase Orders."

> \* \* \* \*

> Further, even if it is as Behr contends that the payment of commissions is tied to "payment of money by the customer," this payment of money is also tied to when the "Material Release" is issued. Therefore, it necessarily follows that a "Material Release," itself, is also tied to the payment of commissions. And the arbitrator's award clearly indicates that the payment of commissions is not subject to the three-year limitation.

> When Behr challenged the continued payment of commissions to M & C after termination of the contract, the arbitrator clearly stated,

>> "I have accepted the evidence which shows that an agent, like Connelly [M & C], is involved in significant effort and expenditure *before commission accrues* [i.e. when a "Material Release" is issued]. It obtains the business for its principal by means of such activity which it undertakes in the hope of future award. The contract scheme in clause 7 for the *continuance of commission after termination* but the cessation of the duty to service at that point seems just and natural and I accept the evidence that *commission payment during "life of [the] part" is customary in the industry."...* (Emphasis added).

> Thus, even if we assume Behr's proposition to be true, it was still the active solicitation of M & C prior to contract termination which resulted in the receipt of Purchase Orders during the three-year time frame, and it was the release of those "new [purchase] orders" which triggered the receipt of money from the customer and the "commission payment[s] during 'life of [the] part.'"

> As the Arbitration Award is clear, the district court erred in granting Behr's motion for stay of enforcement pending arbitration.

*Behr II*, 143 F.3d at 1039-41.

Following the decision in *Behr II,* Behr moved for partial satisfaction of the judgment for all amounts due under the Eighth Award on the 1994 K Special parts. In the motion, Behr represented that it paid M & C $468,163.42 in commissions and post-judgment interest "on all purchase orders for 'K Special' parts for the 1994 model year," which, it argued, "fully satisfies all sums due for '1994 K Special' parts under the Eighth Award as interpreted by the Sixth Circuit." The district court denied the motion. *See M & C Corp. v. Erwin Behr GmbH & Co.,* 34 F. Supp. 2d

543, 547 (E.D. Mich. 1999). After M & C moved for clarification of what Behr owed on the Eighth Award, the district court amended its prior opinion to include the following language:

> Accordingly, the Sixth Circuit's holding that M & C is entitled to commissions for the "life of the part" means that M & C is entitled to commissions on any material release for each "1994 K Special" part order pursuant to any Purchase Order which was issued by General Motors Corporation to Behr prior to March 18, 1994.

The district court's clarification of the Sixth Circuit's interpretation of Behr's obligation under the Eighth Award did not end the matter, however, because Behr filed yet another motion for partial satisfaction of judgment, contending that it had actually overpaid M & C by over $200,000. According to Behr, it did not owe commissions to M & C on certain lines of parts (specifically, the 1996 EK parts and 1997 K parts) because they were ordered by General Motors more than three years after the termination of the contract between M & C and Behr and were not therefore "actively solicited" by M & C. In response, M & C cited a reference in *Behr II* to Behr's obligation to pay commissions during the "life of the part" and argued that "commissions were payable for the life of the part program whenever those orders were renewed or extended." M & C argued that the 1996 EK parts and 1997 K parts were essentially the same as those parts for which M & C actively solicited orders and that a simple name-change did not justify depriving M & C of a commission. M & C further argued that, regardless of whether Behr and GM chose to *identify* parts with a yearly label, *e.g.*, "1994 K Special" or "1996 EK," all such parts were either renewals or extensions of old orders, new orders, or renewals or extensions of new orders; adding a "year" tag to a part program name – *i.e.*, adding "1996" to "K Special" – does not make the *program* any different, according to M & C.

The district court rejected M & C's arguments, agreeing with "the Magistrate Judge's recommendation that 'the only commission to which M & C is entitled are those on parts ordered (through blanket Purchase Orders) within three years after the 1991 termination.'" The district court reasoned:

> The arbitrator's award clearly applies to only those parts specifically listed under "1991 Model Year Business", "1992 Cadillac Business," and "1994 Cadillac 'K' Car Series" in the arbitrator's award. The language [in the arbitrator's award] that "it is immaterial that there should have been design changes in the parts concerned after the application of the [sales] efforts [of the Agent]" does not expand the scope of "the parts concerned."… Similarly, the "life of the part" language does not broaden the scope of the parts concerned, as Plaintiff contends.

The district court remained uncertain, however, as to the amounts, if any, Behr owed M & C. After receiving briefs from the parties, the same district court that had earlier held the award to be unambiguous found the award to be "unclear in its application" and that the award did "not fully adjudicate an issue that had been submitted" to the arbitrator. The court therefore entered an order remanding the matter to the original arbitrator to clarify the amounts owed under that award. According to the district court, remanding to the arbitrator under these circumstances simply would require him to complete his duties by applying his reasoning to the facts and would not reopen the merits of the case.

On appeal in *Behr III*, this Court reversed the district court's remand order. We held:

> [T]he district court's order lacks any indication of precisely how the Eighth Award is "unclear as to its application", or which issue submitted to the arbitrator was "not fully adjudicate[d]." Nor with any confidence can we divine the answers from the circumstances; prior to its remand order, the district court had expressly held that the

arbitrator's opinion and award were *not* ambiguous with respect to Behr's obligation to pay commissions on the 1996 EK parts and 1997 K parts. If the district court has changed its mind about *this* issue, it needs to say so and explain it. If there is *another* ambiguity in the award that makes enforcement impossible, the district court needs to identify it. Until it does so, we cannot undertake a meaningful review of whether the award is ambiguous or whether the circumstances are appropriate for a remand to the arbitrator. Moreover, the district court's vague order creates a substantial risk that the arbitrator will have insufficient guidance as to how to clarify its award, creating the potential for yet another journey to the district court, to this court on appeal, and back yet again to the arbitrator. Accordingly, we find it necessary to remand this case to the district court for clarification of the precise issue or issues that remain for the arbitrator on remand.

*Behr III*, 326 F.3d at 783 (emphasis in original).

On remand, by order of March 29, 2004, the district court specified the purported ambiguities in the arbitrator's award and remanded to the arbitrator for clarification:

[T]he Eighth Award is ambiguous in its scope. The Eight Award states in part that Plaintiff should be paid for "any order of products in the territory and specifically including the following products." The award is unclear insofar as the Court cannot determine whether or not the list that follows this statement is the exclusive list of the products on which commissions are due. Furthermore, as Defendant notes, there is a continuing controversy over how long particular parts are commissionable.… The Court was unable, based on the language in the award and the parties' filings, to divine what amount, if any, should be paid on the award.… Therefore the Court will remand this case to Arbitrator Andrew W. A. Berkeley (1) to state the exact scope of the products commissionable under the Eighth Award and (2) to state what payments, if any, are due to each party from the other under the Eighth Award.

Although Behr timely appealed the district court's order of remand, it failed to ask the district court to stay its remand order, as required by Rule 8(a)(1) of the Federal Rules of Appellate Procedure. Instead, Behr moved this Court for a stay. On July 1, 2004, this Court denied Behr's motion because, *inter alia*, Behr had failed to demonstrate irreparable harm that would warrant the issuance of a stay. *M & C v. Erwin Behr GMBH & Co., KG*, No. 04-1557 (6th Cir. July 1, 2004). On the eve of oral argument, the parties filed a stipulation with the Court to dismiss the present appeal, without prejudice, and with each party bearing its own costs. The Court denied the stipulation on April 25, 2005. Thereafter, the parties moved this Court to reconsider the denial of the stipulation, which the Court also refused to grant. In that motion, the parties informed the Court that the arbitration hearing that the district court ordered had taken place from April 11 through 13, 2005 in London, England and that one of the issues addressed was whether the original arbitration award is ambiguous. At the conclusion of the hearing, the arbitrator purportedly indicated that he would endeavor to issue a decision by May 2, 2005. To date, the parties have not apprised the Court of any new decision from the arbitrator.

## II
## PURPORTED AMBIGUITY OF THE EIGHTH AWARD

### A.       Standard of Review

A determination of the arbitrability of a dispute is subject to *de novo* review. *Behr II*, 143 F.3d at 1037.

**B.        Analysis**

Although federal courts have jurisdiction to enforce arbitrations awards, courts may not go beyond the arbitration award to decide questions that the arbitrator did not decide. *Behr II*, 143 F.3d at 1037-38 (citing *United Steelworkers of America v. Enter. Wheel & Car Corp.,* 363 U.S. 593, 599 (1960)). "An ambiguous award may not be enforced but should be remanded to the arbitrator." *Id.* at 1038 (citing *Enter. Wheel*, 363 U.S. at 597-98). "However, if the arbitrator's opinion and award, read together, are not ambiguous, the award should be enforced." *Id.* (citing *Int'l Bhd. of Elec. Workers, Local 369 v. Olin Corp.*, 471 F.2d 468 (6th Cir. 1972)). As discussed below, the relevant portions of the arbitration award, as well as the parties' contract, are unambiguous and, therefore, the district court erred in remanding to the arbitrator for further clarification on the scope of products for which Behr must pay commissions.

Behr terminated its sales agency agreement with M & C on March 18, 1991. The parties' agreement specifies Behr's post-termination obligations to pay commissions to M & C as follows:

First, pursuant to Clause 7.1 of the agreement, Behr is obligated to pay commissions on (a) all purchase orders obtained by M & C and accepted in writing by Behr prior to the termination of the agreement, and (b) any extensions or renewal purchase orders for "the same individual item" and accepted in writing by Behr prior to the termination of the agreement.

Second, pursuant to Clause 7.2 of the agreement, Behr is obligated to pay commissions on all extension or renewal purchase orders "for the same individual items" received from customers following the termination of the agreement.

Third, pursuant to Clause 7.3 of the agreement, Behr is obligated to pay commissions "on all new [purchase] orders" that (a) are "not renewal or extension [purchase] orders," (b) are received from customers within three years following the termination of the agreement (March 18, 1994), *and* (c) were actively solicited by M & C prior to the agreement's termination. Clause 7.4 defines "actively solicited" orders to mean "[purchase] orders which may reasonably be regarded to have materialized mainly as a result of the negotiations and sales efforts" of M & C.

As noted, Clause 7.2 obligates Behr to pay commissions on renewal orders regardless of when Behr receives them, so long as those orders involve the "same individual items" as in the original purchase order. Also as noted, Clause 7.3 obligates Behr to pay commissions on all "new orders" received within three years of the contract's termination. Viewed in isolation, Clause 7.2 does not, on its face, place a durational limit on renewal orders for which Behr has to pay commissions, unlike the three-year window for new orders. Clause 7.2 could be read to impose a commission obligation on renewal orders only for products that were covered by a purchase order that M & C solicited and Behr accepted prior to the contract's termination on March 18, 1991. Under a more expansive interpretation, however, Clause 7.2 could be read to impose a commission obligation not only on renewal orders for products covered by a pre-termination purchase order, but also renewal orders for "new orders" under Clause 7.3 – *i.e.*, renewal orders for products covered by a purchase order that M & C actively solicited and that Behr received between March 18,1991 and March 18, 1994. Under this latter interpretation of Clause 7.2, Behr's obligation to pay commissions on renewal orders for purchase orders that originated within the three-year, post-contract termination period would not cease until the renewal orders ended, even if those orders were received more than three years after contract termination.

The following example illustrates how the expansive interpretation of Clause 7.2 would operate. The "1994 K Special" was a new order that M & C actively solicited and that Behr received on October 14, 1992, during the three-year, post-contract termination period. Behr concedes that it owes commissions on this purchase order as a "new order" under Clause 7.3. Under

the expansive interpretation of Clause 7.2, however, Behr also would be obligated to pay commissions on all renewal orders for "K Special" parts that are the "same individual items" as the "1994 K Special" parts, even if those renewal orders were placed more than three years after the contract's termination. Thus, assuming that the "1997 K Special" parts are the same as the "1994 K Special" parts, Behr would be obligated to pay commissions for these parts, even though the purchase order for the "1997 K Special" parts was placed at least five years after the contract's termination.

The contract as a whole, does not support this expansive reading of Clause 7.2. Clause 7.3 specifically states that Behr's obligation to pay commissions on orders placed within three years of contract termination extends only to new orders, "which are *not* renewal or extension orders." If the parties had intended Behr to pay M & C commissions for renewal orders of "new orders" under Clause 7.3, then they would not have needed to specifically exclude "renewal or extension orders" from Clause 7.3. Accordingly, the only logical reading of Clause 7.2 and 7.3 is that M & C is entitled to commissions on renewal orders placed after the termination of the contract as long as those renewal orders relate to the "same individual items" covered by a purchase order that M & C obtained and Behr accepted *prior to the contract's termination on March 18, 1991*.

In the so-called "Eighth Award," the arbitrator dealt with M & C's claim that it was entitled to, *inter alia*, commissions for post-termination orders, and ordered Behr to pay all commissions for "any order of products in the territory and specifically including the following products:" various parts falling under the classification "1991 Model Year Business"; various parts falling under the classification "1992 Cadillac Business"; and various parts falling under the classification "1994 Cadillac 'K' Car Series." The district court held that the arbitrator's use of the "specifically including" language to define the range of comissionable parts creates an ambiguity because the definition implies that M & C might be entitled to commissions on additional parts that the arbitrator did not list with particularity. Behr argues on appeal that any ambiguity is irrelevant because the only parts that arguably would be commissionable under a more expansive definition were ordered more than three years after the termination of the contract between Behr and M & C and, therefore, Behr has no obligation to pay, per Clause 7.3 of the agreement.

We agree with Behr. Behr has paid all commissions on the "1994 K Special" parts that were ordered in the 1994 model year; Behr concedes that it owed commissions for sales of these parts because it is undisputed that the purchase order was received within three years of terminating the contract with M & C. As discussed above, however, any subsequent purchase orders for "1994 K Special" parts that Behr received after the three-year period are non-commissionable under Clause 7.3 of the contract because Clause 7.3 does not obligate Behr to pay commissions for renewal orders when the original purchase order was placed after March 18, 1991.

Behr further argues that the "1996 EK" parts and the "1997 K Special" parts are new parts that General Motors designed and first ordered more than three years after the termination of the agreement with M & C. Indeed, the evidence appears to show that GM and its suppliers issued new purchase orders for these products, and the parts have different part numbers, engineering drawings, pricing, and tooling as compared to the "1992 EK" and "1994 EK" parts. Notably, M & C does not dispute that the 1996 and 1997 parts are not identical to predecessor parts, instead arguing that the products are "essentially the same" to predecessor parts. *M & C's Br.* at 6 n.1; *see also id.* at 7 n.1 ("[D]uring the course of production over the years in any of the programs or platforms, parts are initially assigned 'part numbers' which may, in subsequent years, be changed while still referring to the same essential part."); *id.* at 27-28 (stating that "parts produced under the so-called 1997 K Special and 1996 EK program… are nothing more than redesigns of parts and programs actively solicited and actually produced by [M & C] from GM for Behr…"). Assuming that the "1996 EK" and "1997 K Special" parts are not identical to predecessor parts, then purchase orders for those

parts are not commissionable under Clause 7.3 because they constitute "new orders" that were placed more than three years after contract termination.

Moreover, even assuming that the "1997 K Special" parts are identical to the "1994 K Special" parts, which are commissionable, Behr need not pay commission on orders for the "1997 K Special" parts because those orders would constitute renewal orders for a purchase order that was placed during the three year period following Behr's termination of the contact with M & C. Under Clause 7.3, such renewal orders are non-commissionable; as discussed above, renewal orders are commissionable under clause 7.2 only if the original purchase order was received prior to the contract termination date.

M & C nevertheless argues that the scope of commissionable products is ambiguous, thus requiring a remand to the arbitrator, by claiming that the arbitrator intended to award M & C commissions on all orders arising from contract "programs" that M & C actively solicited prior to the contract termination date. *See M & C Br.* at 6-7 n.1, 15. M & C implies that, because the "EK" and "K Special" programs commenced in 1992 and 1993, respectively, and because M & C is entitled to commissions on products ordered during those years, all subsequent purchase orders for "EK" and "K Special" parts are commissionable (even if placed more than three years after the contract termination date) because the orders were placed pursuant to a commissionable program. *See id.* at 6-7 n.1. According to M & C, the arbitrator should decide which interpretation of the contract is correct. *Id.* at 23.

M & C has not advanced a plausible interpretation of the parties' contract or the arbitrator's award interpreting that contract. The parties' agreement says nothing about commissions based on "programs." M & C bases its asserted entitlement to "program"-based commissions on the following statement in the arbitrator's award:

> *I find* that Connelly has provided a sufficient body of the required documentary evidence to fulfill all the requirements of Clause 7.4 [defining "actively solicited" orders] and that, included within the scope of products subject to commission, are all products under the 1994 K Special program.

This quotation from the arbitrator's award is irrelevant, however, because the arbitrator's finding that M & C "actively solicited" the "1994 K Special" parts does not translate into a finding that M & C is entitled to commissions on every subsequent order for "K Special" parts. The contract authorized the arbitrator to specifically award commissions on the "1994 K Special" parts because orders for those parts were placed within three years of the contract's termination. The same is not true of "K Special" orders for subsequent years.

There are only two clauses in the parties' contract pursuant to which M & C could recover commissions for post-1994 orders of "K Special" parts, but neither clause is availing. To recover commissions under clause 7.2, M & C would have to characterize the post-1994 orders as renewal orders and link those orders to a purchase order that M & C obtained and Behr accepted prior to the contract's termination. M & C concedes, however, that Behr received the "K Special" parts purchase order *after* terminating its contract with M & C. *See M & C Br.* at 7 n.1. To receive commissions under clause 7.3, M & C would have to characterize the post-1994 "K special" part orders as new orders, which by definition are *not* orders for "the same individual items" covered by a prior purchase order (which are renewal orders). M & C argues, however, that the "K Special" parts are essentially the same from year to year, indicating its belief that the post-1994 orders for "K Special" parts are renewal orders for which M & C would not be owed commissions. Moreover, even if the post-1994 orders for "K Special" parts are for different parts and therefore are considered new orders, M & C would not be entitled to commissions because those orders were placed more than three years after Behr terminated its contract with M & C.

M & C also rests its argument on another passage from the arbitrator's decision discussing Clause 7.4, in which he stated:

> Clause 7.4 then goes on to say: "'actively solicited' orders shall mean such orders which may reasonably be regarded to have materialized mainly as a result of the negotiations and sales efforts of the Agent [M &C] and proven to the Company [Behr] by the production of any letters, telexes, plans, specifications and other documentation exchanged with the Customers prior to the said date of termination." It is to be noted that the criteria is materialization of orders as a result of efforts; it is immaterial that there should have been design changes in the parts concerned after the application of the efforts and also that the business could have been lost by the component supplier because of unacceptable pricing or bad quality.

As above, Clause 7.4 has nothing to do with the three-year time limit on commissionable new orders under Clause 7.3. The fact M & C can be found to have actively solicited an order for a part even though the design for that part had changed by the time the customer placed an order has no bearing on the separate requirement that orders for new products be received within three years of the contract termination date in order to be commissionable.

M & C also attempts to engraft a "life of the part" commission obligation on Behr; however, no "life of the part" language is contained in the parties' agreement, and Clause 7.2 makes it clear that Behr is obligated to pay commissions for the "life of the part" only when customers renew orders for products that originally were ordered prior to Behr's termination of the contract. Commissions on orders for new products that M & C actively solicited are payable only if Behr received the orders within three years of the contract's termination.

In further support of its argument, M & C cites to an October 27, 1992 purchase order from General Motors (designated INL-D5677), which purportedly represents "the initial blanket purchase order for the K Special and EK product issued to Behr on October 14, 1992[,] for the 3-year period effective *commencing* on August 14, 1994, and which thereby includes *at least* the three-year period following August 1994, i.e. through August[] 1997." *M & C Br.* at 37 (emphasis in original). The purchase order, however, explicitly states, "Seller agrees to sell and buyer agrees to purchase… for the period from the date hereof *to the end of the model year shown hereon.*" (J.A. 167.) (emphasis added). The model year shown on the purchase order is "Model Year 1993." *Id.* Although the purchase order states that it was "issued per negotiated 3 year contract, per Cadillac," J.A. 169, M & C has not identified the referenced "contract," nor has it argued that it actively solicited that three-year contract. In any event, the fact remains that GM needed to issue new purchase orders to purchase parts for Model Years 1994 and beyond. Because this Court has held that M & C's right to commissions is contingent on the issuance of "purchase orders," *Behr II*, 143 F.3d 1039-41, Clause 7.3 of the parties' contract entitles M & C to commissions only for those GM purchase orders that Behr received by March 18, 1994. It is immaterial that GM was contractually committed to issue purchase orders in subsequent years.

For these reasons, the district court erred in concluding that there is an ambiguity in the contract and/or the arbitration award over the scope of commissionable products. Although the district court identified an ambiguity when it concluded that the arbitrator's use of the phrase "specifically including" implies that more than the products he listed in Award Eight are commissionable, that ambiguity is irrelevant because the only potential products for which Behr has not paid commissions were ordered more than three years after the contract's termination. Thus, there is no reason to remand this issue to the arbitrator.

As noted at the outset, the parties claim that they recently arbitrated the purported ambiguity in the arbitrator's Eighth Award concerning the scope of commissionable products. But because the

parties' contract is clear on its face, the district court erred in remanding this issue to the arbitrator. Accordingly, the arbitrator's forthcoming decision can and will have no bearing on our decision today.

## III
## REMAINING OBLIGATIONS UNDER THE EIGHTH AWARD

The remaining issue is whether to remand to the arbitrator to resolve the issue of what payments, if any, are due to each party from the other under the Eighth Award. The district court apparently found it necessary to remand because of its belief that the scope of commissionable products is ambiguous. Because the commissionable products issue can be resolved through unambiguous contractual language, a remand to the arbitrator on the issue of payments is unnecessary.

M & C argues that it has not been fully paid the Eighth Award, relying on a report from Gerald Hepp, CPA, who is a court-appointed receiver. According to a report that Hepp filed with the district court, Behr owes approximately $3 million in additional commissions, statutory penalties, attorney fees, interest, and receiver fees. Although Hepp's calculations omit any commissions for purchase orders for the 1996 EK and 1997 K Special parts, his report includes commissions on all purchase orders for the 1994 K Special parts, including those orders received more than three years after Behr terminated its contract with M & C. In response, Behr's expert (James Grosskopf, CPA) calculated commissions due M & C based on the same sales and payment figures in Hepp's report, but excluded orders for the 1994 K Special parts that were received more than three years after the date of the contract termination. Grosskopf determined that Behr actually had overpaid M & C by $229.039. *See* J.A. 596-600.

Because Hepp's assumptions regarding M & C's entitlement to commissions were partially incorrect under Clause 7.3 of the parties' contract, a court must determine whether Behr's expert has accurately computed the commissions owed and paid to date. If the court finds that Behr has fully satisfied the Eighth Award, then it should enter a partial satisfaction judgment for Behr and order M & C to refund any overpayments. *See* FED. R. CIV. P. 60(b)(5) ("On motion and upon such terms as are just, the court may relieve a party… from a final judgment, order, or proceeding [because]… the judgment has been satisfied, released, or discharged…."). A remand to the district court on this issue, however, would only invite further delay in this protracted litigation. Therefore, this Court shall retain jurisdiction over this case. Within 30 days of this opinion's issuance, the parties shall submit a joint stipulation reflecting the amounts owed or overpaid pursuant to Award Eight. If the parties cannot agree on these amounts, they are directed to advise the Court in writing of their respective positions. After receipt of the joint stipulation or the opposing briefs, the Court will enter an appropriate final judgment resolving the issue of payments owed under the contract.

## IV
## CONCLUSION

For all the foregoing reasons, we **REVERSE** the March 29, 2004 order of the district court remanding this case to arbitration and retain jurisdiction over this matter to finally determine the parties' respective monetary obligations under the arbitrator's Eighth Award. Within 30 days of today's order, the parties shall advise the court what commissions, if any, Behr owes M & C pursuant to the Eighth Award or whether Behr has overpaid M & C in light of the Court's construction of the parties' contract. In order to avoid further delay in this seemingly endless litigation, the Court admonishes the parties to make every effort to jointly stipulate to an accounting under the Eighth Award. Otherwise, the parties shall separately advise the Court of their positions in writing. Thereafter, the Court shall enter a final judgment resolving the parties' dispute over the Eighth Award.

––––––––––––––

## DISSENT

––––––––––––––

MERRITT, Circuit Judge., dissenting.  Instead of reversing the District Court, I would require the parties to file the arbitrator's report that is currently pending and then determine the appropriate action to take, in light of that report.