**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 17a0300n.06

Case No. 16-4004

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| LOCAL 1982, INTERNATIONAL LONGSHOREMEN'S ASSOCIATION, | ) ) ) | **FILED**<br>May 30, 2017<br>DEBORAH S. HUNT, Clerk |
| Plaintiff-Appellee, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR |
| v. | ) ) | THE NORTHERN DISTRICT OF OHIO |
| MIDWEST TERMINALS OF TOLEDO INTERNATIONAL, INC., | ) ) ) | |
| Defendant-Appellant. | ) | |

BEFORE: GIBBONS, COOK, and GRIFFIN, Circuit Judges.

COOK, Circuit Judge. In 2012, an arbitration panel issued an award requiring Midwest Terminals of Toledo International, Inc. ("Midwest"), to establish a welfare-and-pension trust fund for the members of International Longshoremen's Association, Local 1982 (the "Union"). Midwest attempted to invalidate the panel's decision, but we confirmed the award, and the district court issued an order accordingly. When the parties still could not agree on the trust fund's details, the Union returned to court to clarify the arbitration award. Finding the award ambiguous, the district court remanded to the arbitration panel for clarification. Midwest appeals the remand order. We AFFIRM.

**I.**

*Background Facts.* Midwest specializes in transporting and handling cargo at a port on the Maumee River in Ohio. The Union represents the dockworkers who load and unload cargo for Midwest. Both parties are signatories to a collective-bargaining agreement ("CBA") that governs the dispute at hand.

In December 2011, the Union filed a grievance alleging that Midwest had failed to establish a welfare-and-pension trust fund in compliance with the Employee Retirement Income Security Act ("ERISA"), as required by § 5.A of the CBA. When Midwest denied the grievance's validity, the Union referred the matter to a "Joint Grievance Committee" ("Committee"), a two-person arbitration panel composed of one union representative, Raymond Sierra, and one employer representative, Keith Flagg.

The Committee scheduled a hearing for March 16, 2012. (Despite Flagg's exhorting the company to participate, Midwest sat out the hearing and refused to submit any evidence regarding whether it had paid into an ERISA-compliant trust fund.

On April 16, 2012, the Committee issued its award, which stated in relevant part: "[O]ur ruling is that a procedure be moved forward to correct [Midwest]'s apparent violation . . . of the [CBA]." Because Midwest failed to timely appeal, the arbitration award became final and binding.

When Midwest continued to disavow the legitimacy of the Committee's decision, the Union moved in federal district court to confirm the award and compel Midwest's compliance. Midwest countered with a motion to vacate the award, which the district court granted. On appeal, however, we reversed the district court's decision and confirmed the award. *Local 1982, Int'l Longshoremen's Ass'n v. Midwest Terminals of Toledo Int'l, Inc.* (*Midwest I*), 560 F. App'x

529, 540 (6th Cir. 2014). Pursuant to our instructions, the district court ordered the award enforced.

Just over a month later, the parties returned to district court to resolve a disagreement over what the arbitration award required. Despite several supervised conferences, Midwest and the Union could not reach a resolution.

*Procedural Facts.* Given the impasse, the Union moved to remand the award to the Committee for clarification. Opposing the remand motion, Midwest argued that no ambiguity existed, and that any Committee decision "establish[ing] the terms and conditions of the Trust Agreement" would therefore constitute impermissible "interest arbitration" rather than clarification. It also contended that if the district court chose to remand, Mr. Sierra (the Union's representative on the arbitration panel) was unfit to serve on the arbitration panel based on a 2003 Department of Labor consent decree barring him from overseeing any ERISA benefit plans.

Citing the "divergent interpretations presented by the parties," the district court ordered "the matter . . . to the [Committee] for clarification." Additionally, because the award lacked any language modifying the existing CBA terms or imposing a new collective-bargaining agreement, the court found no interest-arbitration problem. As for Sierra's fitness, the court noted that Midwest cited no authority allowing for remand to a new arbitration panel under the circumstances.

After Midwest timely appealed the remand order, the Committee scheduled a clarification hearing. Midwest moved for a stay of the hearing, and in its motion, raised one more impediment to clarification: Because Flagg left his job and no longer serves as a Committee member, the Committee can no longer be reconstituted and thus cannot clarify its award.

## II.

We review whether an arbitration award is ambiguous or unclear—and in turn, whether to remand the award for clarification—de novo.  *See M & C Corp. v. Erwin Behr GmbH & Co.* (*Behr II*), 143 F.3d 1033, 1037–38 (6th Cir. 1998).

Under the doctrine of *functus officio*, an arbitration panel that has issued a final arbitration award may not alter it after the fact.  *Green v. Ameritech Corp.*, 200 F.3d 967, 976–77 (6th Cir. 2000) (citing *Indus. Mut. Ass'n Inc. v. Amalgamated Workers, Local 383*, 725 F.2d 406, 412 n.3 (6th Cir. 1984)).  But "[w]here the award, although seemingly complete, leaves doubt whether the [submitted grievance] has been fully executed, an ambiguity arises which the arbitrator is entitled to clarify."  *Id.* at 977 (first alteration in original) (quoting *La Vale Plaza, Inc. v. R.S. Noonan, Inc.*, 378 F.2d 569, 573 (3d Cir. 1967)); *see also Sterling China Co. v. Glass, Molders, Pottery, Plastics & Allied Workers Local 24*, 357 F.3d 546, 555 (6th Cir. 2004) ("[T]he arbitrator has the power under the exception of the doctrine of *functus officio* to go back and 'clarify' an ambiguous or incomplete portion of an award." (quoting *M & C Corp. v. Erwin Behr GmbH & Co.* (*Behr III*), 326 F.3d 772, 782 (6th Cir. 2003)).  If the award is ambiguous, the court "may not interpret [the] . . . arbitration award unless the ambiguity can be resolved from the record."  *Ganey v. Raffone*, 91 F.3d 143, Nos. 94-6298, 94-6300, 1996 WL 382278, at *2 (6th Cir. July 5, 1996) (table) (citations omitted).

The Committee's entire arbitration award comprises only three short paragraphs.  The relevant portions state that:

> As a signatory employer of the [CBA] since 2004 . . .  we believe your company, [Midwest,] and prior union officers of [the Union] . . . have had ample time to establish trust fund plans that meet minimum ERISA standards which satisfy the

requirement of "local union and employer ERISA approved benefit, pension and welfare plans" as defined in the [CBA].

Therefore, our ruling is that a procedure be moved forward to correct [Midwest]'s apparent violation of 5.A of the [CBA].

Although the Committee decided that Midwest violated the CBA, the award's proposed remedy lacks benchmarks for measuring the parties' compliance. For example, the language of "procedure to be moved forward" fails to explain what counts as an acceptable "procedure" or at what point the procedure has advanced far enough to "correct" Midwest's violation. Indeed, it is unclear if a "procedure," without a defined goal, can remedy the missing ERISA plans. The Committee's "fail[ure] . . . to specify the remedy in definite terms" therefore makes this arbitration award ripe for clarification. *Courier-Citizen Co. v. Boston Electrotypers Union No. 11*, 702 F.2d 273, 279 (1st Cir. 1983); *see also Int'l Bhd. of Teamsters, Local 631 v. Silver State Disposal Serv., Inc.*, 109 F.3d 1409, 1411 (9th Cir. 1997).

The parties also contest the following language: "trust fund plans that meet minimum ERISA standards which satisfy the requirement of 'local union and employer ERISA approved benefit, pension and welfare plans.'" As the district court pointed out, both parties acknowledge an obligation to fund the plans, but differ on how to structure and administer the benefits. In particular, they disagree over whether the parties themselves or the trustees of the proposed plans should determine the benefits offered to Union members. According to the Union:

> [T]he Joint Grievance Committee ordered Midwest to establish ERISA trust funds that are jointly administered by an equal number of Union and Company trustees. . . . [T]he ERISA funds' boards of trustees would administer the ERISA funds, including establishing the plan or plans of benefits offered to fund participants through ERISA funds. . . .

Midwest, on the other hand contends that:

> [T]he award merely requires Midwest to establish trust fund plans that meet the minimum ERISA standards and that a procedure be moved forward to correct Midwest's apparent violation of 5.A of the Master Agreement. The Award does not mandate the specific terms and conditions of the Trust Agreement nor does it dictate that trustees are to administer the plan, i.e.[], create the health and welfare fund.

In evaluating the competing readings above, we have no way to judge whether Midwest's proposal, the Union's proposal, both, or neither satisfy the terms of the Committee's award. Midwest's interpretation focuses on the award's language of "minimum ERISA standards"; the Union's interpretation draws on a combination of the award's language and the practice of Local 1317, its counterpart in Cleveland, Ohio. *See United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 581–82 (1960) ("The labor arbitrator's source of law is not confined to the express provisions of the contract, as the industrial common law—the practices of the industry and the shop—is equally a part of the collective bargaining agreement although not expressed in it."). Without clarification from the Committee, we would be "engag[ing] in guesswork as to the meaning and application of an ambiguous award." *Behr III*, 326 F.3d at 782. Moreover, nothing in the record resolves the ambiguity.

Midwest argues that the award clearly requires the parties to negotiate "the terms and conditions of the Trust Agreement," and because Midwest has engaged in such negotiations, it "has complied with the Award and the case is closed." But Midwest's interpretation of the remedy is no remedy at all because it merely places the parties back at the bargaining table—the position the parties occupied prior to the Union's filing of the grievance—without fulfilling the CBA requirement for the creation of a trust fund. Common sense dictates that the Committee

intended something more. Accordingly, remand to the arbitration panel is both justified and appropriate in light of the ambiguous award.

### III.

Midwest characterizes the Union's efforts to "establish the terms and conditions of the Trust Agreement"[1] as impermissible "interest arbitration."[2] And because Midwest has never consented to interest arbitration, it argues that the Committee lacks the authority to institute such terms and conditions. The award's ambiguity, however, obviates the need to address whether the Union's interpretation of the award (i.e., its proposal for structuring and administering the trust fund) is the correct one, and correspondingly, whether its interpretation constitutes interest arbitration.

Until the Committee clarifies the award, we cannot determine whether the Committee has exceeded the scope of its authority under the CBA or federal law. *See Brown v. Witco Corp.*, 340 F.3d 209, 221 (5th Cir. 2003) ("[I]f the arbitrator exceeds the scope of a limited remand order, then the court may vacate those portions of the arbitrator's decision on remand that go beyond his limited authority to clarify, complete, or correct the award that he has already made.").

---

[1] During oral argument, Midwest claimed that only the National Labor Relations Board (NLRB) has jurisdiction over negotiations to resolve the trust fund's terms. But as Midwest admits, the ambiguous award neither establishes fund terms nor sets out a procedure for setting such terms. We therefore need not address Midwest's NLRB argument at this time.

[2] "Interest arbitration . . . focuses on what the terms of a new agreement should be, rather than the meaning of the terms of the old agreement." *Local 58, Int'l Bhd. of Elec. Workers v. Se. Mich. Chapter, Nat'l Elec. Contractors Ass'n, Inc.*, 43 F.3d 1026, 1030 (6th Cir. 1995). Grievance arbitration, on the other hand, "entails the interpretation and application of provisions of an existing collective bargaining agreement." *Sheet Metal Workers, Int'l Ass'n, Local 24 v. Architectural Metal Works, Inc.*, 259 F.3d 418, 429 (6th Cir. 2001).

## IV.

Finally, Midwest insists on a new arbitration panel on remand, arguing that because a Department of Labor consent order taints Sierra, and Flagg is unavailable, clarification is impossible. We disagree.

Midwest maintains that "[c]ourts [should] remand arbitration claims to a new arbitrator where the arbitrator in question acted, or failed to act, in a manner from which one might infer bias against one of the parties, corruption, fraud or other misconduct." But Midwest failed to raise Sierra's misconduct (as described in the 2003 consent decree) during the 2012 arbitration hearing or when it later moved to vacate the award; it has therefore forfeited this argument. *Cf. Apperson v. Fleet Carrier Corp.*, 879 F.2d 1344, 1358–59 (6th Cir. 1989) (affirming district court's refusal to consider bias argument because "as a general rule, a [party] must object to an arbitrator's partiality at the arbitration hearing before such an objection will be considered by the federal courts"). Nor has Midwest demonstrated "exceptional circumstances" excusing its failure to raise the misconduct claim. *Early v. E. Transfer*, 699 F.2d 552, 558 (1st Cir. 1983).

As for the assertion that Flagg's replacement cannot work with Sierra to clarify the award, Midwest correctly notes that courts generally remand an award for clarification to the original arbitration panel that issued the award. *See Behr III*, 326 F.3d at 783; *San Antonio Newspaper Guild Local No. 25 v. San Antonio Light Div.*, 481 F.2d 821, 825 (5th Cir. 1973). Midwest expresses particular concern that the arbitration panel that considered the evidence at the initial hearing differs from the panel that will clarify the award.

The circumstances of this case warrant proceeding with the panel in its current form rather than restarting with a new panel. *First*, the original panel that heard the evidence at the hearing was the same one that issued the final award, so Midwest has suffered no unfairness with

regard to resolving the grievance's merits. *Compare Jones v. St. Louis–San Francisco Ry. Co.*, 728 F.2d 257, 259–60, 263–264 (6th Cir. 1984) (vacating an arbitration award where two members of a three-member panel heard the evidence but did not participate in issuing the award), *with U.S. Energy Corp. v. Nukem, Inc.*, 400 F.3d 822, 831–32 (10th Cir. 2005) (allowing remand despite the death of a panel member because the original panel had already issued an award and only needed to determine damages).

*Second*, starting the grievance process anew would not serve the goals of practicality and efficiency. *See Locals 2222, 2320-2327, Int'l Bhd. of Elec. Workers v. New England Tel. & Tel. Co.*, 628 F.2d 644, 649 (1st Cir. 1980) (describing the purpose of arbitration as "the speedy, flexible and inexpensive resolution of labor disputes"); *San Antonio Light*, 481 F.2d at 825–26 (upholding a different arbitrator's existing clarification, even where remand to the original arbitrator would have been proper, because a second clarification "would be a pointless gesture")[3]; *see also Muskegon Cent. Dispatch 911 v. Tiburon, Inc.*, 462 F. App'x 517, 528 (6th Cir. 2012) (deciding, for purposes of efficiency, to remand two claims to a new arbitrator rather than splitting the claims between the original and the new arbitrator). Additionally, courts have remanded an award for clarification even when a similar contingency (i.e., resignation, retirement, death, etc.) changes the composition of the panel. *See, e.g.*, *U.S. Energy Corp.*, 400 F.3d at 831–32 ("[N]either the passage of time nor the fact that one of the three arbitration panel members has died precludes remand."); *see also Ins. Co. of N. Am. v. Pub. Serv. Mut. Ins. Co.*,

---

[3] Midwest attempts to distinguish its case from *San Antonio Light*, arguing that *San Antonio Light*'s holding relies on the parties' agreement to submit their claim to a new arbitrator. But Midwest misreads *San Antonio Light*. The court there affirmed the new arbitrator's clarification because remanding to the original arbitrator would have duplicated efforts and needlessly prolonged litigation. *Id.* at 825–26.

609 F.3d 122, 129–30 (2d Cir. 2010) (noting the potential for a losing party to manipulate arbitration by pressuring an arbitrator to resign for the purpose of receiving a new arbitration panel).

*Finally*, the district court, prior to Flagg's announcement of his departure, remanded the award to "the *arbitration entity* which issued the original award," not to particular individuals. Although Flagg is no longer a member, the Committee remains the valid entity under the CBA, and no other statutory or CBA language provides otherwise.

## V.

We AFFIRM the district court's order remanding the arbitration award for clarification and DENY Midwest's pending motion for a stay of the clarification hearing.