RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 19a0292p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

LOCAL 1982, INTERNATIONAL LONGSHOREMEN'S ASSOCIATION,

*Plaintiff-Appellee*,

*v.*

MIDWEST TERMINALS OF TOLEDO, INTERNATIONAL, INC.,

*Defendant-Appellant*.

> No. 19-3319

─────────────────

Appeal from the United States District Court
for the Northern District of Ohio at Toledo.
No. 3:17-cv-01688—Jeffrey James Helmick, District Judge.

Decided and Filed: December 10, 2019

Before: ROGERS, STRANCH, and THAPAR, Circuit Judges.

─────────────────

## COUNSEL

**ON BRIEF:** Ronald L. Mason, Aaron T. Tulencik, MASON LAW FIRM CO., L.P.A., Dublin, Ohio, for Appellant. Joseph C. Hoffman, Jr., Joseph D. Mando, FAULKNER, HOFFMAN & PHILLIPS, LLC, Cleveland, Ohio, for Appellee.

STRANCH, J., delivered the opinion of the court in which ROGERS and THAPAR, JJ., joined. THAPAR, J. (pp. 7–10), delivered a separate concurring opinion.

─────────────────

## OPINION

─────────────────

JANE B. STRANCH, Circuit Judge. For the third time, we are asked to review this dispute over a labor arbitration award issued in 2012. In short, Local 1982 of the International

Longshoremen's Association successfully pursued a grievance against Midwest Terminals to enforce their contract requiring Midwest to establish pension and welfare trust fund plans that comply with the Employee Retirement Income Security Act (ERISA). In 2014, we enforced the Joint Grievance Committee's award in *Local 1982 I.* When disputes arose about implementing that award, Local 1982 returned to court seeking clarification from the Committee, composed of one employer and one union arbitrator. Midwest argued that no ambiguity existed and by engaging in negotiations it had complied with the award and the grievance was terminated. We ultimately affirmed remand of the award to the arbitrators for clarification, *Local 1982 II*, but before that could occur, Midwest's CFO was appointed to the Committee as the representative for the employers; a deadlock resulted. Local 1982 sought to follow the next step of the grievance procedure in the contract; Midwest refused, arguing that the deadlock terminated the grievance procedure. The district court ordered the parties to proceed to the next step. We **AFFIRM**.

## I.  BACKGROUND

Our prior decisions set out the specific facts, which are briefly summarized here. At the time of the initial dispute, Local 1982 and Midwest were parties to a collective bargaining agreement (CBA) that consisted of a Master Agreement, formed between the parties' affiliated regional employer group and the union, and a Local Agreement between the parties. *Local 1982, Int'l Longshoremen's Ass'n v. Midwest Terminals of Toledo, Int'l, Inc.*, 560 F. App'x 529, 530 (6th Cir. 2014) ("*Local 1982 I*"). Both agreements have provisions that address the benefit, pension, and welfare plans relevant to the underlying dispute. *Id.* at 531-32.

In 2011, the union filed a grievance against Midwest for its failure to establish and contribute to such trust plans under Section 5.5A of the Master Agreement. After Midwest responded to the Union that it considered the grievance procedurally invalid, the Union escalated the grievance to Step Two of the Master Agreement grievance procedure—referral to a Joint Grievance Committee comprised of an employer representative and a union representative. *Id.* at 532.

Midwest refused to participate and did not respond to the requests of the Joint Grievance Committee for explanation and cooperation; the hearing went forward without Midwest present. *Id.* at 532-33. The central question at the hearing was whether Midwest established ERISA-compliant funds in accordance with Section 5.5A of the Master Agreement, which sets out "[t]he minimum contribution to affiliated local union and employer ERISA approved benefit, pension, and welfare plans." The Committee determined that Midwest had failed to do so and issued its ruling against Midwest. *Id.* at 533. Under the Master Agreement, Midwest could appeal the unfavorable award within ten days but did not do so; the award became final and binding, and the union filed suit to enforce it. *Id.* at 534-35. Finding that any contract ambiguity is an issue for the arbitrator, not the courts, we directed the district court to enter an order enforcing the award. *Id.* at 537, 540.

Shortly thereafter, the parties were back in court, this time over ambiguities in the content of the award. The district court found that the award was ambiguous and remanded to the Committee for clarification. We affirmed in *Local 1982 II*, finding that where an award "leaves doubt whether the submitted grievance has been fully executed, an ambiguity arises which the arbitrator is entitled to clarify." *Local 1982, Int'l Longshoremen's Ass'n v. Midwest Terminals of Toledo, Int'l, Inc.*, 694 F. App'x 985, 987 (6th Cir. 2017) ("*Local 1982 II*") (internal brackets, citations, and quotation marks omitted). We ruled that the award should be remanded for clarification, rejecting Midwest's argument that it complied with the award by negotiating about terms and conditions of the trust agreement; we reasoned that those actions failed to fulfill "the CBA requirement for the creation of a trust fund" and "[c]ommon sense dictates that the Committee intended something more." *Id.* at 989.

After the remand but before clarification of the award, the composition of the two-person Committee changed. Over the opposition of the union, Midwest appointed its Chief Financial Officer, Fred Diechert, to replace the employer representative on the Committee. The new two-person Committee deadlocked in clarifying the award. Local 1982 sought to escalate the grievance to Step 3 of the Master Agreement for review by an expanded grievance committee to resolve the deadlock. Midwest opposed the escalation and argued that Local 1982's earlier efforts to confirm the arbitration award rendered it final, and a deadlock in interpreting the award

terminated the procedure.  The district court found Midwest's arguments to be unavailing, and Midwest appeals.

## II.  ANALYSIS

This litigation is principally about the definition of a minimally compliant ERISA plan. "ERISA is a complex statute, but its purpose is simple: to establish a uniform regulatory regime for plan administration that protects monies belonging to plan beneficiaries while such funds are held and managed by others." *Wilson v. Safelite Grp., Inc.*, 930 F.3d 429, 434 (6th Cir. 2019) (internal citations and quotation marks omitted).  With few exceptions, ERISA requires compliant plans to hold assets for plans in trust, 29 U.S.C. § 1103(a), and plan assets may be used only to provide benefits and pay reasonable expenses and "shall never inure to the benefit of any employer," 29 U.S.C. § 1103(c)(1).  An ERISA plan fiduciary may be an employer, but the fiduciary is required to act "solely in the interest of the [Plan] participants and beneficiaries," 29 U.S.C. § 1104(a)(1), and must not "deal with the assets of the plan in his own interest or for his own account," 29 U.S.C. § 1106(b)(1).  While the details are in dispute and require further clarification, the award here mandates the establishment of plans that comply with these principles.  We turn to the procedures at issue.

The district court remanded the case for further clarification of an arbitration award previously confirmed by this circuit in *Local 1982 I*.  The parties dispute whether we should review the district court's decision de novo or for an abuse of discretion.  That issue turns on whether the district court's decision to remand was based on application of the law of the case. *Compare M & C Corp. v. Erwin Behr GmbH & Co.*, 143 F.3d 1033, 1037–38 (6th Cir. 1998), *with Rouse v. DaimlerChrysler Corp.*, 300 F.3d 711, 715 (6th Cir. 2002).  Midwest loses under either standard.

Midwest argues on appeal that the grievance terminated because neither party filed a timely notice of appeal when the award was issued in 2012, and the clarification of the award resulted in a deadlock.[1]  But the practical consequence of this argument is that the winning party

---

[1]Neither party has argued that this question should be decided by an arbitrator rather than a court.  *See John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 555–59 (1964); *United SteelWorkers of Am., AFL-CIO-CLC v. Saint*

in an arbitration would have to appeal a favorable decision or risk losing the relief sought. This frustrates the purpose of grievance proceedings. Local 1982 had no reason to appeal an award in its favor but every reason to enforce a final arbitral award in the courts. As noted in multiple decisions in this case, moreover, Midwest chose not to participate in the initial proceeding. It cannot argue now that the case is closed on an alternative ground when courts have already affirmed the legitimacy of the proceeding. *See Marino v. Writers Guild of America, E., Inc.*, 992 F.2d 1480, 1484 (9th Cir. 1993) ("A party may not sit idle through an arbitration procedure and then collaterally attack that procedure on grounds not raised before the arbitrators when the result turns out to be adverse.").

It is also well settled that final arbitration awards may be remanded back to the original arbitrator or arbitration committee for clarification. *See, e.g.*, *Indus. Mut. Ass'n, Inc. v. Amalgamated Workers, Local Union No. 383*, 725 F.2d 406, 412 n.3 (6th Cir. 1984) ("A remand is proper, both at common law and under the federal law of labor arbitration contracts, to clarify an ambiguous award or to require the arbitrator to address an issue submitted to him but not resolved by the award."); *United Steelworkers of Am., Local 4839 v. New Idea Farm Equip. Corp.*, 917 F.2d 964, 968 (6th Cir. 1990) ("Because there had been no timely motion to vacate, modify or correct the award, the district court could not have remanded for the purpose of modifying or correcting the award. But it did have the authority to remand for clarification."); *M & C Corp. v. Erwin Behr GmbH & Co.*, 143 F.3d 1033, 1038 (6th Cir. 1998) ("An ambiguous award may not be enforced but should be remanded to the arbitrator.").

Midwest's argument, unadorned by precedent, is that the grievance is terminated, and that the award is unenforceable because it cannot be clarified by the initial arbitration Committee. But the award does not lose its effect simply because the original Committee cannot agree on a clarification of its contents. As established by the governing CBA, Step 3 of the grievance procedure specifies that if a grievance "is not satisfactorily settled or adjusted in Step 2, it shall be referred to an Expanded Joint Grievance Committee," the membership of which is

---

*Gobain Ceramics & Plastics, Inc.*, 505 F.3d 417, 420–22 (6th Cir. 2007) (en banc). So we need not resolve whether it otherwise would be.

then defined.  The district court properly remanded the dispute to the next step of the grievance procedure.  We previously ordered the parties to fulfill "the CBA requirement for the creation of a trust fund," *Local 1982 II*, 694 F. App'x at 989, and the process must now continue as set out in the CBA until that is accomplished.

## III.  CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's order that the parties proceed with the grievance and arbitration procedure set forth in the Master CBA.

———————————

**CONCURRENCE**

———————————

THAPAR, Circuit Judge, concurring.  Courts have long struggled to define what it means for a decision to be "final."  Over a century ago, the Supreme Court observed that "[p]robably no question of equity practice" had "been the subject of more frequent discussion" and confessed that its cases on the issue were "not altogether harmonious."  *McGourkey v. Toledo & O.C. Ry. Co.*, 146 U.S. 536, 545–46 (1892).  And matters have not improved much since then.  *See, e.g.*, *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 170 (1974) ("No verbal formula yet devised can explain prior finality decisions with unerring accuracy or provide an utterly reliable guide for the future.").  Even so, courts should do the best they can to bring some coherence to the doctrine. I write separately to flag one such area for our court.

This appeal arises from a long and somewhat complicated procedural history.  But here most of the details don't matter.  Almost a decade ago, Local 1982 of the International Longshoremen's Association received an arbitration award against Midwest Terminals of Toledo.  In an initial appeal, our court confirmed the award and ordered it enforced.  *Local 1982, Int'l Longshoremen's Ass'n v. Midwest Terminals of Toledo, Int'l, Inc.*, 560 F. App'x 529 (6th Cir. 2014) (*Local 1982 I*).  In a later appeal, we affirmed an order remanding the award back to the arbitrator for clarification.  *Local 1982, Int'l Longshoremen's Ass'n v. Midwest Terminals of Toledo, Int'l, Inc.*, 694 F. App'x 985 (6th Cir. 2017) (*Local 1982 II*).  In this third appeal, Midwest challenges another order remanding the award for clarification.

Neither party questions our jurisdiction.  Perhaps because our circuit has held that an order remanding an award back to the arbitrator for clarification is a "final decision" and thus appealable.  *M & C Corp. v. Erwin Behr GmbH & Co., KG*, 326 F.3d 772, 779–81 (6th Cir. 2003) (per curiam).  But that holding seems inconsistent with much of the law in this area.

Start with the principle of finality.  The Supreme Court has made clear that a "final decision"—in the arbitration context and more generally—"ends the litigation on the merits and leaves nothing more for the court to do but execute the judgment."  *Green Tree Fin. Corp.-Ala.*

*v. Randolph*, 531 U.S. 79, 86 (2000) (citation omitted). And that rule applies no less to proceedings that occur *after* the district court has entered a final judgment—as is the case here. Indeed, our circuit (like others) has explained that courts should view finality in post-judgment proceedings the same way they view finality more generally: they should ask whether the decision *ends* the post-judgment litigation. *See JPMorgan Chase Bank, N.A. v. Winget*, 920 F.3d 1103, 1105–08 (6th Cir. 2019) (collecting cases).

So does a remand order end the litigation? It doesn't seem like it. Courts remand arbitration awards for clarification because they can't enforce ambiguous awards. *See M & C Corp. v. Erwin Behr GmbH & Co.*, 143 F.3d 1033, 1038 (6th Cir. 1998). The remand allows the arbitrator to complete its assigned task (*i.e.*, resolve the dispute between the parties) and allows the court to review the award with more information. *See Green v. Ameritech Corp.*, 200 F.3d 967, 977 (6th Cir. 2000). By all appearances, then, the remand does not *end* the litigation. Rather, it contemplates that the parties will soon return to court for further enforcement proceedings.

If you have any doubts on that score, just look at our past cases. Recall that our court previously exercised jurisdiction over a remand order. *See Local 1982 II*, 694 F. App'x at 986. And now the parties have returned to court with further grievances related to the remand. Ironically, this has happened before—in the very case that held that remand orders are final decisions. *See M & C Corp.*, 326 F.3d at 774–78. So both logic and experience show that remands don't end the litigation on the merits.

Probably for that reason, every other circuit to address the issue has held (or at least implied) that an order that simply remands an award back to the arbitrator for clarification is not a final decision. *See, e.g.*, *Bull HN Info. Sys., Inc. v. Hutson*, 229 F.3d 321, 328 (1st Cir. 2000); *Landy Michaels Realty Corp. v. Local 32B-32J, Serv. Emps. Int'l Union, AFL-CIO*, 954 F.2d 794, 795–98 (2d Cir. 1992); *Virgin Islands Hous. Auth. v. Coastal Gen. Constr. Servs. Corp.*, 27 F.3d 911, 913–14 (3d Cir. 1994); *Murchison Capital Partners, L.P. v. Nuance Commc'ns, Inc.*, 760 F.3d 418, 420–23 (5th Cir. 2014); *Jays Foods, L.L.C. v. Chem. & Allied Prod. Workers Union, Local 20, AFL-CIO*, 208 F.3d 610, 613 (7th Cir. 2000); *Union Pac. R.R. Co. v. United*

*Transp. Union*, 3 F.3d 255, 258 (8th Cir. 1993); *Cascade Nat. Gas Corp. v. Int'l Chem. Workers Union Council/UFCW Local 121-C*, 776 F. App'x 939, 940–41 (9th Cir. 2019) (order); *cf. Sanchez v. Elizondo*, 878 F.3d 1216, 1219 n.1 (9th Cir. 2018).

Finally, consider how our own circuit (as well as most other circuits) treats remand orders in three analogous contexts:

- *Administrative Agencies*.  A remand back to an administrative agency for further proceedings is generally not final and appealable.  *See Schuck v. Frank*, 27 F.3d 194, 196 (6th Cir. 1994); *see also Occidental Petroleum Corp. v. S.E.C.*, 873 F.2d 325, 329–30 (D.C. Cir. 1989) (collecting cases).

- *ERISA Administrators*.  A remand back to an ERISA plan administrator for further proceedings is generally not final and appealable.  *See Bowers v. Sheet Metal Workers' Nat. Pension Fund*, 365 F.3d 535, 536 (6th Cir. 2004); *see also Mead v. Reliastar Life Ins. Co.*, 768 F.3d 102, 107 (2d Cir. 2014) (per curiam) (collecting cases).

- *Bankruptcy Courts*.  A remand back to a bankruptcy court for further proceedings is generally not final and appealable.  *See Settembre v. Fid. & Guar. Life Ins. Co.*, 552 F.3d 438, 441 (6th Cir. 2009); *see also In re Holland*, 539 F.3d 563, 565 (7th Cir. 2008) (collecting cases).

These cases provide a simple rule:  remand orders are generally not final and appealable.

Of course, as with most rules, there are exceptions.  Courts have recognized that a remand order can be immediately appealable if a statute provides as much, *see Bowers*, 365 F.3d at 537–38, or if the remand involves purely ministerial matters, *see Settembre*, 552 F.3d at 441, or if the remand can only be challenged through an immediate appeal, *see Schuck*, 27 F.3d at 196–97.  But these exceptions are exactly that:  exceptions to the general rule that remand orders are not final and appealable.

In the end, nothing in this case turns on whether we exercise jurisdiction over the remand order. Either way, the parties will return to arbitration to clarify the award. And regardless, this panel must follow our binding precedent on the issue. But in a future case, I would encourage our court to take another look at our precedent in this area.